## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Civil Docket No. 1:25-cv-22639-RAR

MATTHEW S. ATTALLA, an individual; and
BOXR STUDIOS LLC, a Florida Limited Liability
Company,

       Plaintiffs/Counter-Defendants,

v.

MATTHEW LEE MORGAN, an individual;
MATTHEW LEE MORGAN as trustee of the
MATTHEW LEE MORGAN TRUST; CRAIG
BRIDGMAN, an individual; CAMBRIDGE
CAPITAL OF MIAMI, LLC, a Florida Limited
Liability Company; BOXR HOLDING, INC., a
Delaware Limited Liability Company; and BOXR
HOLDING, LLC, a Delaware Limited Liability
Corporation,

       Defendants/Counter-Plaintiffs.

_____/

### COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM

Counter-Defendants, Matthew S. Attalla ("Attalla individually") and BOXR Studios LLC ("BOXR Studios") (collectively "Attalla"), pursuant to Fed. R. Civ. P. 12(b)(6), herby move to dismiss the Counterclaim asserted by Defendants, Matthew Lee Morgan, individually ("Morgan"), Matthew Lee Morgan as Trustee of the Matthew Lee Morgan Trust ("Morgan Trust"), Craig Bridgman ("Bridgman"), Cambridge Capital of Miami, LLC ("Cambridge"), BOXR Holding, Inc. ("Holding Inc.") and BOXR Holding, LLC ("Holding LLC") (collectively "Counter-Plaintiffs").

The Counterclaim is a textbook example of a shotgun pleading. It consists of 120 paragraphs of general allegations, and eight causes of action, each of which haphazardly incorporates all preceding paragraphs, such that the last cause of action contains 190 paragraphs of allegations. In other words, the Counterclaim incorporates into each successive count all preceding allegations and counts. This improper incorporation of all preceding allegations and counts results in a pleading that is neither short nor plain and that violates well-established Eleventh Circuit precedent. On this basis alone, dismissal is proper. Beyond that pleading deficiency, the Counterclaim also fails to state any claim on the merits.

**PERTINENT ALLEGATIONS IN THE COUNTERCLAIM**

In the summer of 2021, when Attalla had a fledgling fitness facility in a small studio space where he taught boxing and fitness classes, he met Morgan through a mutual friend. [DE 15 ¶¶ 2, 29, 30]. Counter-Plaintiffs allege that Attalla had formed BOXR Studios but had not applied for any trademark regarding the BOXR name with the United States Patent and Trademark Office or any state authority. [*Id.* ¶¶ 1, 31]. Counter-Plaintiffs allege that Morgan and Attalla began discussing a "Joint Venture" to develop a fitness and boxing business and that Morgan introduced Attalla to Bridgman, a "trusted . . . experienced and successful investor," who could provide additional financial support. [*Id.* ¶¶ 32-34]. It is alleged that the three men decided to form a "Joint

1

Venture," pursuant to which Morgan (through Morgan Trust) and Bridgman (through Cambridge) (Morgan, Morgan Trust, Bridgman and Cambridge are collectively hereinafter referred to as "Morgan & Bridgman") would provide capital and "business acumen" to develop a fitness/boxing business and Attalla would be the operating partner and CEO. [*Id.* ¶¶ 3, 4, 35].

Counter-Plaintiffs allege that Morgan, Bridgman and Attalla agreed to form a holding company for the "Joint Venture" and that Attalla would assign BOXR Studios to Holding Inc. [DE 15 ¶¶ 36, 37, 40]. They further allege that Morgan & Bridgman each would receive 30% of the "Joint Venture," and Attalla would receive 40%. [*Id.* ¶¶ 4, 38, 39]. Counter-Plaintiffs allege that, in August of 2021, Morgan, Bridgman and Attalla formed and registered Holding, Inc. and BOXR Gym LLC ("BOXR Gym") as a wholly owned subsidiary of Holding Inc. [*Id.* ¶¶ 5, 40, 42, 44, 47, 48]. Counter-Plaintiffs allege that Morgan and Attalla signed the formation documents for Holding Inc. and the operating agreement for BOXER Gym, [*Id.* ¶¶ 5, 44, 47, 49], and that Morgan, Bridgman and Attalla caused Holding Inc. to register a trademark for BOXR to be owned by Holding Inc. [*Id.* ¶¶ 7, 51, 52-54, 84].

In or around August 2021, Morgan, Bridgman and Attalla began looking for a new property for the Gym and, after identifying a new location, Morgan negotiated the lease for BOXR Gym (the "Lease"), which Attalla signed as director of Holding Inc. [DE 15 ¶¶ 6, 55-59]. Counter-Plaintiffs allege that Morgan provided a personal guarantee for the Lease. [*Id.* ¶¶ 6, 60]. Counter-Plaintiffs allege that, after forming Holding Inc., Morgan, Bridgman and Attalla began preparing a stockholder agreement but that Attalla was concerned about his citizenship status and told Morgan & Bridgman that "he could be deported if he was identified in any formation documents" and, thus, he asked them to pause on the finalization of the formation documents until he could resolve his immigration status. [DE 15 ¶¶ 8, 61-64]. To accommodate Attalla's concerns, Counter-

2

Plaintiffs assert they agreed not to finalize the stockholder agreement. [*Id.* ¶¶ 8, 65]. Counter-Plaintiffs allege that Attalla agreed to allow Morgan & Bridgman to form and be the sole owners of Holding LLC for purposes of holding the trademark and the Lease. [*Id.* ¶¶ 9, 66-68].

Counter-Plaintiffs allege that Holding LLC was registered as a Delaware limited liability company in December 2021. [DE 15 ¶ 69]. They further allege that Attalla agreed to be excluded from the ownership of Holding LLC "to alleviate Attalla's purported concerns about his citizenship status." [*Id.* 5 ¶¶ 9, 70]. They allege that Morgan Trust was initially identified as the sole owner and that Cambridge later became a member so that Morgan Trust and Cambridge each held 50% of Holding LLC. [*Id.* ¶ 71]. Counter-Plaintiffs allege that Attalla agreed to continue as CEO of the "Joint Venture" without any ownership interest in Holding LLC, and that the "Joint Venture" would be memorialized once Attalla's citizenship issues were resolved. [*Id.* ¶¶ 9, 72, 73]. They allege that Attalla "was fully aware of, and approved of," the transfer of BOXR Gym and the Mark to Holding LLC and, shortly thereafter, the dissolution of Holding Inc. [*Id.* ¶¶ 10, 74, 75].

Counter-Plaintiffs allege that Morgan, Bridgman and Attalla began building the BOXR business, with (a) Attalla serving as CEO, and (b) Morgan & Bridgman providing $845,837.00, which was largely used to construct the Gym, along with their "corporate know-how." [DE 15 ¶¶ 10, 77]. Counter-Plaintiffs assert that, because Morgan & Bridgman were "owners of the Joint Venture, they provided this funding as 'equity' without formal terms or documentation." [*Id.* ¶ 83]. They further allege that, without formal terms or documentation, they guaranteed millions of dollars of payment obligations on BOXR Gym's behalf for the Lease and equipment leases, which Attalla could not do because he "claimed to be an unauthorized citizen (and thus had no credit)." [*Id.* ¶¶ 11, 85]. Counter-Plaintiffs allege that they provided a sophisticated team to help grow and develop the "Joint Venture," attended business meetings for potential partnerships and helped

solicit new clients for the Gym. [*Id.* ¶ 12]. The Gym opened for business on or around April 11, 2022, and it is alleged that Morgan & Bridgman "took an active role in soliciting new clients for the Gym." [*Id.* ¶¶ 87, 88]. Counter-Plaintiffs allege that Morgan provided Attalla access "to his team of professionals" so he could "use their experience and organizational structure to develop the BOXR business." [*Id.* ¶ 89].

According to the Counterclaim, in the summer of 2022, Morgan & Bridgman became concerned about moving forward without documentation and that they again asked Attalla to memorialize the "Joint Venture." [DE 15 ¶¶ 13, 90]. Counter-Plaintiffs allege that, because of his citizenship status, Attalla again refused to sign the "necessary documents" even though he helped draft them, and Morgan & Bridgman agreed to proceed without memorializing the "Joint Venture" in an effort to "help Attalla." [*Id.* ¶¶ 13, 91, 92].

It is alleged that Morgan, Bridgman and Attalla proceeded as "Joint Venture" partners until 2023, when Attalla began claiming that Morgan & Bridgman were not entitled to any ownership of the BOXR business. [DE 15 ¶¶ 14, 93, 94]. Counter-Plaintiffs allege that Attalla kept all BOXR Gym proceeds for himself while making no distributions to Morgan & Bridgman. [*Id.* ¶¶ 15, 109, 120]. Counter-Plaintiffs allege that Attalla "justified his position by pointing to the lack of any documentation" reflecting any ownership by Morgan & Bridgman. [*Id.* ¶¶ 16, 104]. Counter-Plaintiffs allege that they were "shocked" at Attalla's position given that Morgan & Bridgman had so generously "invested" $845,837 and guaranteed "millions of dollars on BOXR Gym's behalf" without executing any documents to accommodate Attalla's alleged concern about his citizenship, but that they, nevertheless, attempted to negotiate a "business divorce" with Attalla. [*Id.* ¶¶ 16, 111, 114]. Counter-Plaintiffs allege that, "upon information and belief," Attalla's statements about his alleged citizenship concerns were disingenuous and/or false when made. [*Id.* ¶ 112].

4

Counter-Plaintiffs allege that Attalla started making monthly payments to Morgan & Bridgman but stopped paying in 2024 and that he now claims the "Joint Venture" never existed and that Morgan & Bridgman were lenders "with no ownership rights in the business," while Attalla collects the profits from the Gym. [DE 15 ¶¶ 17, 110, 115, 116]. Counter-Plaintiffs allege, "upon information and belief," that Attalla has since "sold" Morgan & Bridgman's alleged "stake in the Joint Venture" without their knowledge or consent. [*Id.* ¶ 19].

## **LEGAL ARGUMENT**

The Counterclaim is an impermissible shotgun pleading and should be dismissed on that basis. In addition, the Counterclaim fails to state any claim, as a matter of both fact and law.

## I. **The Counterclaim Should be Dismissed as a Shotgun Pleading**

Fed. R. Civ. P. 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Relatedly, Fed. R. Civ. P. 10 requires that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." In other words, a complaint "must make it possible 'to know which allegations of fact are intended to support which claim(s) for relief.'" *Am. Cas. Co. of Reading v. Superior Pharmacy, LLC*, No. 8:13-cv-00622-T-27TBM, 2013 WL 12156519, at *1 (M.D. Fla. Oct. 29, 2013) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Comm. Coll.*, 77 F. 3d 364, 366 (11th Cir. 1996)). "Neither the Court, nor the Defendants, should be required to 'sift through the facts presented and decide for [itself] which are material to the particular cause of action asserted.'" *Id*. (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F. 3d 1293, 1296 n.9 (11th Cir. 2002)).

Complaints that violate Rule 8(a) and/or Rule 10(b) are referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F. 3d 1313, 1320 (11th Cir. 2015). Several different kinds of shotgun pleadings exist. *Weiland*, 792 F. 3d at 1321-22. One example is a

5

"complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1322 & n.11 (citing 20 cases in footnote). In such a pleading, "allegations of fact that may be material to a determination of count one, but not count four, are nonetheless made a part of count four. . . . [I]t is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Paylor v. Hartford Fire Ins. Co.*, 748 F. 3d 1117, 1126 (11th Cir. 2014) (quoting *Anderson*, 77 F. 3d at 366). As explained:

> The Eleventh Circuit has repeatedly condemned the use of shotgun pleadings for "imped[ing] the administration of the district courts' civil docket." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F. 3d 802, 806 n.4 (11th Cir. 2010)). Stated bluntly, shotgun pleadings are "a massive waste of judicial and private resources." *Id.* (cleaned up). Thus, the Eleventh Circuit has made clear that shotgun pleadings are an unacceptable form of establishing a claim for relief. [*Strategic Income Fund*, 305 F. 3d at 1296].

*Mainardi v. Unite Here Local 355*, No. 23-CV-23339-RAR, 2023 WL 7929062, at \*2 (S.D. Fla. Nov. 9, 2023). District courts routinely dismiss such complaints, and the Eleventh Circuit routinely affirms such dismissals. *See, e.g., Keith v. DeKalb Cnty., Ga.*, 749 F. 3d 1034, 1045 n.39 (11th Cir. 2014) ("The complaint, through its incorporation into successive counts all preceding allegations and counts, is a quintessential 'shotgun' pleading—the sort of pleading we have been roundly condemning for 30 years"); *PVC Windoors, Inc.*, 598 F. 3d at 806, n.4 (finding a "typical shotgun pleading" where the last of a complaint's ten counts "amounts to an amalgamation of all counts"); *Magluta v. Samples*, 256 F. 3d 1282, 1284 (11th Cir. 2001) ("Each count incorporates by reference the allegations made in a section entitled "General Factual Allegations"—which comprises 146 numbered paragraphs—while also incorporating the allegations of any count or counts that precede it. The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.").

6

That same defect exists here. Count I "repeat[s] and reallege[s] each and every allegation contained in the preceding paragraphs as if fully set forth herein." [DE 15 ¶ 121]. Counts II through VIII do the same. [*Id.* ¶¶ 134, 143, 152, 164, 173, 179, 186]. Accordingly, Count VIII contains 190 paragraphs of allegations and incorporates all prior counts. This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be pled in separate counts. *See Anderson*, 77 F. 3d at 366–67. It is in no sense the "short and plain statement of the claim" required by Fed. R. Civ. P. 8. The Eleventh Circuit repeatedly has held that such a shotgun pleading should be dismissed. *Paylor*, 748 F. 3d at 1126, n.3 (collecting more than twenty cases).

## II.     The Counterclaim Fails to State a Claim Upon Which Relief Can Be Granted

The above analysis should end the inquiry. The Court, however, may address other bases for dismissal. *Silver Crown Invest., LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316, 1334 (S.D. Fla. 2018). The Counterclaim fails to state a claim and should be dismissed.

### A.     Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a complaint "must consist of more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Lattimore v. Wells Fargo Bank, N.A.*, 590 F. App'x 912, 913 (11th Cir. 2014) (quoting Iqbal, 556 U.S. at 678). A "'formulaic recitation of the elements of a cause of action will not do.'" *Simpson v. Sanderson Farms, Inc.*, 744 F. 3d 702, 708 (11th Cir. 2014) (quoting Twombly, 550 U.S. at 555). "Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F. 3d 1327, 1333 (11th Cir. 2010) (quoting *Sinaltrainal v. Coca-Cola Co.*, 578 F. 3d 1252, 1261

(11th Cir. 2009), in turn quoting *Twombly*, 550 U.S. at 570).

Courts will accept a plaintiff's well-pleaded facts as true but need not accept mere legal conclusions. *Brinson v. Welsh*, 709 F. App'x 582, 584 (11th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678). Further, the Court need not "take as true allegations based merely 'upon information and belief.'" *Smith v. City of Sumiton*, 578 F. App'x 933, 936 n.4 (11th Cir. 2014) (citing *Mann v. Palmer*, 713 F. 3d 1306, 1315 (11th Cir. 2013)); *Misquith v. Palm Beach Cnty. Health Care Dist.*, No. 20-CV-81123-AMC, 2021 WL 8055475, at *2 (S.D. Fla. Sept. 29, 2021) ("Factually unsupported allegations based 'on information and belief' are not entitled to the assumption of truth."), R&R adopted, 2022 WL 782545 (S.D. Fla. Mar. 15, 2022).

### B.  Count I: Declaratory Judgment

Counter-Plaintiffs allege that a "bona fide and actual controversy exists" because the parties disagree as to whether the "Joint Venture" exists and whether it owns the BOXR mark. [DE 15 ¶ 131]. Specifically, Counter-Plaintiffs ask the Court to declare that (i) Morgan, Bridgman and Attalla formed the "Joint Venture," (ii) the "Joint Venture" owns the BOXR mark, (iii) Morgan & Bridgman collectively own 60% of the "Joint Venture," (iv) Morgan & Bridgman are entitled to a 60% of the profits of the "Joint Venture," and (v) Attalla must transfer 60% of the profits of the "Joint Venture" to Morgan & Bridgman. [*Id.* ¶ 133].

A motion to dismiss a claim for declaratory judgment is not a motion on the merits; "'it is a motion only to determine whether the plaintiff is entitled to a declaration of rights, not whether it is entitled to a declaration in its favor.'" *Nielson Golden Crab Fishery v. Butterworth*, No. 10–61091–CIV, 2011 WL 3293357, *2 (S.D. Fla. Aug. 1, 2011) (citation omitted). Here, Counter-Plaintiffs have not alleged sufficient facts demonstrating entitlement to a declaration of rights. A claim for declaratory judgment requires the following elements:

8

"(1) there is a bona fide dispute between the parties; (2) the plaintiff has a justiciable question as to the existence or non-existence of some right, status, immunity, power or privilege, or as to some fact upon which the existence of such right, status, immunity, power or privilege does or may depend; (3) the plaintiff is in doubt as to the right, status, immunity, power or privilege; and (4) there is a bona fide, actual, present need for the declaration."

*Hunters Run Prop. Owners Ass'n, Inc. v. Ceterline Real Estate, LLC*, No. 20-CV-80842-RAR, 2023 WL 6037450, at *3 (S.D. Fla. Sept. 15, 2023) (quoting *Nielson Golden Crab Fishery v. Butterworth*, No. 10-61091, 2011 WL 3293357, at *2 (S.D. Fla. Aug. 1, 2011)). Here, Counter-Plaintiffs are not seeking a declaration of their "rights" regarding their relationship with Attalla and BOXR Gym, if any; they are seeking a declaration that Attalla's actions were fraudulent, unfair, and inequitable. These are not "rights" that need to be preserved by immediate judicial intervention. "[A] court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are already before the court." *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346-47 (S.D. Fla. 2012) (quoting *Fernando Grinberg Trust Success Int'l Props., LLC v. Scottsdale Ins. Co.*, 2010 WL 2510662, *1 (S.D. Fla. June 21, 2010) (citation omitted); *see also Garden Apts., Inc. v. Chubb Custom Ins. Co.*, No. 20-cv-23116-UU, 2020 WL 6828774, at *2 (S.D. Fla. Sept. 25, 2020) (collecting cases). Here, the declarations sought are the same as the relief sought in Counter-Plaintiffs' claims for breach of fiduciary duty, fraud, unfair competition, conversion and unjust enrichment.

Additionally, Counter-Plaintiffs' allegations are nothing more than a thinly veiled attempt to have this Court issue an advisory opinion regarding the ultimate merits of the case, which this Court is not authorized to grant. Counter-Plaintiffs seek an advisory opinion as to the enforceability of the "Joint Venture." The multiple requested declarations are impermissible because they request, not only that the Court declare whether there is an agreement amongst the parties, but declare that Attalla gave Morgan & Bridgman his BOXR brand, trademark and business without

9

receiving any ownership interest in the companies in exchange for merely serving in the capacity as an employee. They also impermissibly request the Court to "declare" that Attalla must transfer 60% of the profits of the "Joint Venture" to Morgan & Bridgman. Count I is an improper request for an advisory opinion and it properly should be dismissed for failure to state a claim.

### C.     Count II: Breach of Fiduciary Duty

On behalf of the alleged "Joint Venture," Counter-Plaintiffs allege that Attalla individually, an alleged employee of the "Joint Venture," owes fiduciary duties of loyalty, fairness, candor and due care to the "Joint Venture." [DE 25 ¶¶ 137, 138]. Counter-Plaintiffs allege that Attalla breached those duties by (i) retaining the profits of the BOXR business for himself, (ii) disclaiming any business relationship with Morgan & Bridgman, and (iii) "upon information and belief," competing with the "Joint Venture" by setting up unauthorized entities and housing the assets of the alleged "Joint Venture" in those entities. [*Id.* ¶ 139].

Count II appears to be an attempt to assert a derivative claim. However, "'there is no question that a corporation is an indispensable party in a derivative action brought by one of its shareholders.'" *Lehman v. Eldridge*, No. 11-23973-CIV-GRAHAM/GOODMAN, 2012 WL 12844560, at *4 (S.D. Fla. Jan. 27, 2012) (quoting *Liddy v. Urbanek*, 707 F. 2d 1222, 1224 (11th Cir. 1983)). Counter-Plaintiffs define the "Joint Venture" as a collaboration amongst Morgan, Bridgman and Attalla to "develop a boxing and fitness business under the name 'BOXR.'" [DE 15 ¶ 3]. The "Joint Venture" is not Holding Inc. or Holding LLC. The "Joint Venture" is not a legal entity. As nothing more than a purported collaboration, it is not, and cannot be, a party to this lawsuit. Accordingly, Counter-Plaintiffs lack standing to assert this purported derivate claim on behalf of the "Joint Venture."

Additionally, Counter-Plaintiffs fail to explain how or why Attalla owes any type of duty to an alleged unformed "Joint Venture." As this Court has explained:

10

> Under Florida law, a claim for breach of fiduciary duty requires a plaintiff to show (1) "existence of a fiduciary duty"; (2) "a breach of that duty"; and (3) "damage proximately caused by that duty." *Brouwer v. Wyndham Vacation Resorts, Inc.*, 336 So. 3d 372, 373 (Fla. 5th DCA 2022). "A fiduciary relationship may be either express or implied." *First Nat. Bank & Tr. Co. of Treasurer Coast v. Pack*, 789 So. 2d 411, 415 (Fla. 4th DCA 2001) (citation omitted). "A fiduciary relationship which is implied in law is based on the specific factual circumstances surrounding the transaction and the relationship of the parties and may be found when confidence is reposed by one party and a trust accepted by the other." *Id.* (cleaned up).

*Benessere Invest. Grp., LLC v. Swider*, No. 24-CV-21104-RAR, 2024 WL 4652090, at *10 (S.D. Fla. Oct. 31, 2024). "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Immediate Cap. Grp., Inc. v. Spongetech Delivery Sys., Inc.*, No. 10–60059–CIV, 2019 WL 1644952, at *2 (S.D. Fla. Apr. 22, 2010) (quoting *Taylor Woodrow Homes Fla., Inc. v. 4/46–A Corp.*, 850 So. 2d 536, 540 (Fla. 5th DCA 2003)). Here, Counter-Plaintiffs fail to plausibly allege how they are the "weaker" parties, how they, as amorphous "Joint Venturers," reposed any trust in Attalla, or how Attalla undertook the responsibility to advise, counsel and protect the "Joint Venture."

Finally, no ultimate facts regarding the alleged "unauthorized entities" that Attalla established to house assets are alleged. Counter-Plaintiffs have failed to assert sufficient facts that plausibly demonstrate that Attalla owed the unformed "Joint Venture" a fiduciary duty.

### D.    Count III: Breach of Fiduciary Duty

In Count III, Counter-Plaintiffs allege that Attalla, individually. as CEO of the "Joint Venture," owes Morgan & Bridgman fiduciary duties of loyalty, fairness, candor and due care. [DE 15 ¶¶ 144-146]. Defendants further allege that Attalla breached those duties by denying Morgan & Bridgman their rightful equity in the "Joint Venture," keeping the profits for himself and, "upon information and belief," selling Morgan & Bridgman's stake in the "Joint Venture" without their knowledge or consent. [*Id.* ¶¶ 147, 149, 150].

11

Counter-Plaintiffs allege that Bridgman is "an experienced and successful investor," that Morgan & Bridgman provided "corporate know-how" and the "business acumen to develop [the] fitness/boxing business," led negotiations in a deal with Floyd Mayweather, attended business meetings for potential partnerships, and that Attalla sought Morgan's advice on how to expand the business and placed his trust and reliance on them. [DE 15 ¶¶ 12, 34, 35, 77, 80, 96, 97]. Despite these allegations, in an attempt to state a claim, Counter-Plaintiffs now allege that it was Attalla who undertook the responsibility to advise, counsel and protect Morgan & Bridgman - - individuals who are alleged to be successful entrepreneurs with enough money to lend Attalla a combined total of $824,968 and provide personal guarantees for millions of dollars. [*See id.* ¶¶ 10, 11]. "On a motion to dismiss, the Court is not required to accept internally inconsistent factual allegations in a complaint." *Global Network Mgmt., Ltd., v. Cirion Techs., LLC*, No. 20-cv-20723-JB, 2024 WL 5372675, at *2 (S.D. Fla. Oct. 15, 2025) (citing *Campos v. Immigr. & Naturalization Serv.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998)). Counter-Plaintiffs fail to assert a claim for breach of fiduciary duty. To the contrary, they are conceding a fiduciary duty that was owed to Attalla.

### E.      Count IV: Fraud

Counter-Plaintiffs allege that, in order to solicit their investment, Attalla made material representations to Morgan & Bridgman that (i) Attalla intended to form the "Joint Venture," (ii) Morgan & Bridgman would own 60% of the BOXR business, and (iii) issues with Attalla's immigration status left him vulnerable to deportation if formal documentation were executed. [DE 15 ¶ 154]. Counter-Plaintiffs allege that "[u]pon information and belief, these statements were knowingly false when made." [*Id.* ¶ 155].

Fed. R. Civ. P. 9(b) provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Rule 9(b) serves two purposes:

'alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.'" *U.S. ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F. 4th 1353, 1360 (11th Cir. 2023) (quoting *U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F. 3d 1301, 1310 (11th Cir. 2002)). As this Court has explained:

> While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*Millstein v. Holtz*, No. 21-CV-61179-RAR, 2022 WL 3594915, at *6 (S.D. Fla. Aug. 23, 2022) (quoting *FindWhat Inc. Grp. v. FindWhat.com*, 658 F. 3d 1282, 1296 (11th Cir. 2011)). *See also Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F. 4th 1298, 1307 (11th Cir. 2022) ("claims of fraud must be plead with particularity, which means identifying the who, what, when, where, and how of the fraud alleged.").

Additionally, "[a]s a general matter Rule 9(b) precludes allegations of fraud based on information and belief." *MacSouth Forest Prods., LLC v. Current Builders, Inc.*, No. 0:24-CV-60013-Becerra/Augustin-Birch, 2024 WL 3650456, at *4 (S.D. Fla. July 26, 2024) (quoting *Hekker v. Ideon Grp., Inc.*, No. 95-681-CIV-J-16, 1996 WL 578335, at *4 (M.D. Fla. Aug. 19, 1996) R&R adopted, 2024 WL 4024736 (S.D. Fla. Sept. 3, 2024)). *See also Scott v. Experian Info. Sols., Inc.*, No. 18-cv-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) ("[c]onclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the [plausibility] standard.").

Here, the Counterclaim contains conflicting allegations that undermine Counter-Plaintiffs' allegations that Attalla knowingly made the alleged material misrepresentations. Counter-

13

Plaintiffs allege Attalla "signed the formation documents for BOXR Inc." which were made public when they were recorded with the Delaware Department of State on August 9, 2021, "executed the formation documents for BOXR Gym" and signed the Lease. [DE 15 ¶¶ 5, 6]. Taking these allegations as true for purposes of this motion to dismiss, they demonstrate that Attalla had no concern with allowing his name to appear in the public records in both Florida and Delaware. It is, thus, not probable that Attalla would sign documents that are publicly available, but refuse to sign a private stockholder agreement to reflect the alleged equity allocation of BOXR Inc. Moreover, Counter-Plaintiffs' allegations are all made "upon information and belief," and do not contain any factual support and, thus, fail to meet the plausibility standard. As a matter of well settled law, they are not entitled to a presumption of truth. [*See* DE 15 ¶¶ 8, 16, 19, 112]. In addition, all the allegations of purported "fraud" are made jointly as to Attalla and BOXR Studios. Any fraud allegation must identify the person/entity making the fraudulent statement.

In short, Counter-Plaintiffs' fraud claim fails to allege the who, what, when, where and how of the fraud alleged, as required, and they premise the claim on "information and belief" as prohibited. Consequently, Counter-Plaintiffs' fraud claim should be dismissed.

**F.      Count V: Unfair Competition**

Counter-Plaintiff allege that Attalla "falsely and/or deceptively created numerous other entities bearing the BOXR name and using the BOXR Mark, while making promises to other, undisclosed third parties concerning ownership of these entities" and that he is competing with the Joint Venture by setting up these unauthorized entities" which, in turn, "causes confusion because prospective and current clients conduct business with Attalla's improper entities , believing them to be legitimately part of the BOXR business." [DE 15 ¶ 169-171].

Counter-Plaintiffs fail, however, to provide any factual allegations concerning the alleged

"other entities" which they claim are competing with the "Joint Venture." Their conclusions are nothing more than impermissible "unadorned, the-defendant-unlawfully-harmed-me" accusations. *See Lattimore*, 590 F. App'x at 913. Moreover, Counter-Plaintiffs fail to identify the theory under which they allege Attalla has unfairly competed:

> "Under Florida common law, unfair competition is an 'umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.'" *Ameritox, Ltd. v. Millennium Labs., Inc*., No. 8:11–CV–775–T–24–TBM, 2012 WL 33155, at *4 (M.D. Fla. Jan. 6, 2012) (quoting *Third Party Verification, Inc. v. Signaturelink, Inc*., 492 F. Supp. 2d 1314, 1325 (M.D. Fla. 2007)). "[A] party may claim unfair competition under a variety of theories, including trademark infringement, . . . and tortious interference with business relations. . . . Therefore, there is no single set of 'elements that apply uniformly to all claims of unfair competition.' " *Id*. (quoting *Alphamed Pharm. Corp. v. Arriva Pharm., Inc*., 432 F.Supp.2d 1319, 1353 (S.D. Fla. 2006)). "Accordingly, courts have applied elements from other established claims to unfair competition claims, where appropriate, on a case-by-case basis." *Id*.

*Tobinick v. Novella*, 142 F. Supp. 3d 1275, 1282 (S.D. Fla. 2015). With no facts, and with no elements of any established claim for unfair competition, Count V fails to assert a claim.

### G.      Count VI: Conversion

In Count VI, Counter-Plaintiffs allege that Attalla kept and converted all profits from operating the "Joint Venture." [DE 15 ¶¶ 175-176]. Counter-Plaintiffs allege Attalla's acts were "*ultra vires* and constituted conversion" of Counter-Plaintiffs' property. [*Id.* ¶ 177].

"[C]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Glob. Network Mgmt., Ltd. v. Level 3 Commc'ns, LLC*, No. 18-CIV-24560-RAR, 2019 WL 13072752, at *4 (S.D. Fla. Sept. 7, 2019) (quoting *In re U.S. Sugar Corp. Litig.*, 669 F. Supp. 2d 1301, 1329 (S.D. Fla. 2009) (in turn quoting *Nat'l Union Fire Ins. Co. of Pa. v. Carib. Aviation, Inc*., 759 F.2d 873, 878 (11th Cir. 1995)). However, "a simple monetary debt generally cannot form the basis of a claim for conversion or civil theft." *Walker v. Figarola*, 59 So. 3d 188, 190 (Fla. 3d DCA 2011); *see also Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055

(Fla. 3d DCA 2008) ("[A] simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft.").

In conversion claims for money, the money at issue must be specifically identifiable:

> "A conversion claim for money also requires proof that the funds are specific and identifiable." *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x. 263, 272 (11th Cir. 2009). However, the fact that the amount is certain does not mean that the money is an "identifiable fund." *See Frayman*, 515 F. Supp. 3d at 1286. Money is capable of identification if "it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained." *Tambourine*, 312 F. App'x. at 273 (quoting *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970) ("A mere obligation to pay money may not be enforced by a conversion action.")).

*Pishevar v. Hotels.com*, No. 24-cv-22081-BLOOM/Elfenbein, 2024 WL 4602798, at *6 (S.D. Fla. Oct. 29, 2024). *See Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970) ("To be a proper subject of conversion … there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified.").

Here, Counter-Plaintiffs fail to (a) identify the amount of money or the specific funds allegedly converted, (b) indicate whether the money is kept separate or otherwise is identifiable, or (c) allege whether there was an obligation to keep intact or deliver the specific money in question, so that such money can be identified. They allege only a general obligation to pay money, which cannot support a claim of conversion. *See Belford Trucking*, 243 So. 2d at 648. Because Counter-Plaintiffs have not alleged sufficiently the basic elements of a conversion claim (nor can they), their claim for conversion fails as a matter of law.

## H.    Count VII: Unjust Enrichment

Counter-Plaintiffs allege in Count VII that Attalla failed to share the profits of the "Joint Venture" with Morgan & Bridgman, are holding their "equity in the Joint Venture hostage" and that he has been unjustly enriched in an amount of no less than $25 million. [DE 15 ¶¶ 182-184].

16

"Florida recognizes that claims for unjust enrichment may be appropriate when no contract exists, but the defendant nonetheless received something of value from the plaintiff." *Dixon v. Univ. of Miami*, 75 F. 4th 1204, 1210 (11th Cir. 2023). The elements of such a claim are: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *United Tech. Corp. v. Mazer*, 556 F. 3d 1260, 1270 (11th Cir. 2009) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)). "Additionally, 'to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant.'" *Marrache v. Bacardi U.S.A., Inc.*, 17 F. 4th 1084, 1101 (11th Cir. 2021) (quoting *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)). Unjust enrichment is a legal fiction designed to permit recovery by contractual remedy in those cases where there is no contract. *See Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So. 3d 424, 429 (Fla. 3d DCA 2022). In such cases, a contract is implied as a matter of law "even though the parties to such an implied contract never indicated by deed or word that an agreement existed between them." *14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 880 (Fla. 1st DCA 2010).

It follows, then, that a claim for unjust enrichment cannot be pursued where there exists an express contract between the parties regarding the same subject matter. Florida courts have held that "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Alberta Ltd. v. Netpaving, Inc.,* No. 8:10-cv-568-T-27-MAP, 2011 WL 1103635, at *5 (M.D. Fla. Mar. 24, 2011) (quotations omitted). And, while a plaintiff, under certain circumstances, may pursue a claim for unjust enrichment as an alternative to a claim under an express contract, that is not what Counter-Plaintiffs have done here. Here,

17

Counter-Plaintiffs do not allege that the claim for unjust enrichment is pled in the alternative and they fail to allege that there is no adequate legal remedy to support their unjust enrichment claim. *See Silver Crown Invest., LLC v. Team Real Estate Mgmt., LLC,* 349 F. Supp 3d 1316, 1333 (S.D. Fla. 2018); *Salary Continuation Corp. v. Brown & Brown of Detroit, Inc.,* No. 6:11-CV-Orl-36GJK, 2012 WL 12904724, at *3 (M.D. Fla. June 1, 2012). On the contrary, Counter-Plaintiffs' claim for unjust enrichment is not an independent, alternative claim but, instead, Counter-Plaintiffs allege that Attalla has been unjustly enriched by breaching the terms of an express "Joint Venture" agreement between the parties, which they present as a contract between the parties.

The unjust enrichment claim is not independent of and pled in the alternative to a claim for breach of the terms of an alleged joint venture agreement - - it is dependent on a finding that there was, in fact, a joint venture agreement between the parties. Moreover, the claim is based on the same predicate common facts underlying the other counts and is, thus, duplicative. Finally, Counter-Plaintiffs fail to allege that they "*directly* conferred a benefit" on Attalla and, instead, allege only that Attalla retained the profits from BOXR Gym. The claim for unjust enrichment is insufficiently pled, is facially deficient and properly should be dismissed.

## I.      Count VIII: Accounting

Counter-Plaintiffs seek to compel Attalla "to account for the BOXR business's assets," in which they allege they have an interest, to determine how they have been harmed and how the value of their interest in the "Joint Venture" has been diminished. [DE 15 ¶ 190]. Counter-Plaintiffs allege that Attalla has "disregarded corporate formalities" in maintaining the business records and has refused to provide them for inspection. [*Id.* ¶ 188, 189].

"Under Florida law, a party that seeks an equitable accounting must show that: 1) the parties share a fiduciary relationship or that the questioned transactions are complex, and 2) a

18

remedy at law is inadequate." *Immediate Cap. Grp., Inc. v. Spongetech Delivery Sys., Inc.*, No. 10–60059–CIV, 2010 WL 1644952, at *2 (S.D. Fla. Ap. 22, 2010) (quoting *Am. United Life Ins. Co. v. Martinez*, 480 F. 3d 1043, 1071 (11th Cir. 2007)). Counter-Plaintiffs' allegations do not meet any of these preconditions, and, accordingly, their claim for an accounting should be dismissed.

### III.   The Counterclaim Fails to State a Claim for Punitive Damages

"Under the common law, recovery of punitive damages are limited to cases in which a defendant's conduct is 'outrageous, owing to gross negligence, willful, wanton and reckless indifference for the rights of others, or behavior even more deplorable.'" *Doe v. Royal Caribbean Cruises, Ltd.*, No. 11–23321–Civ–SCOLA, 2012 WL 4479084, at *2 (S.D. Fla. Sept. 28, 2012) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008)). "The misconduct required to support a claim of punitive damages is the same conduct that is necessary to sustain a conviction for criminal manslaughter." *Associated Industries Ins. Co., Inc. v. Advanced Mgm't Services, Inc.*, No. 12–80393–CIV, 2013 WL 1176252, at *3 (S.D. Fla. March 20, 2013). "[M]erely setting forth conclusory allegations in the complaint is insufficient to entitle a claimant to recover punitive damages. . . . Instead, a plaintiff must plead specific acts committed by a defendant." *Porter v. Ogen, Newell & Welch*, 241 F. 3d 1334, 1341 (11th Cir. 2001). "A request for punitive damages must be stricken from the complaint if the allegations therein do not present a factual basis supporting the recovery of punitive damages, in other words, factual allegations showing wanton, willful or outrageous conduct." *Doe*, 2012 WL 4479084, at *2.

In their Prayer for Relief, Counter-Plaintiffs seek punitive damages. [DE 15 p. 40]. Yet there are no specific factual allegations in the Counterclaim of wanton, willful, or outrageous conduct by Attalla that supports entitlement to the remedy of punitive damages. There are no allegations of conduct that rise to the level required to support a claim for punitive damages. In

short, the Counterclaim fails to set forth any factual allegations to sustain a prayer for punitive damages. Accordingly, Counter-Plaintiffs' request for punitive damages in their Prayer for Relief properly should be stricken.

**CONCLUSION**

Counter-Plaintiffs' Counterclaim is a textbook example of an impermissible shotgun pleading. Additionally, they have failed to state any claim upon which relief may be granted against any Counter-Defendant. The Counterclaim is a transparently obvious defensive reaction to Counter-Defendant's Complaint and a ploy to create financial commitments where none exist. Because there exist no specific facts that could legally give rise to any of the claims Counter-Plaintiffs have attempted to assert, the Counterclaim properly should be dismissed.

WHEREFORE, Counter-Defendants, Matthew Attalla and BOX Studios LLC, respectfully request that the Court (1) dismiss the Counterclaim, for the reasons set forth above, (2) award the Counter-Defendants their attorneys' fees and costs to the fullest extent permitted by applicable law; and (3) grant such further relief as the Court deems just and appropriate.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Eric D. Isicoff
      Eric D. Isicoff
      Florida Bar No. 372201
      Isicoff@irlaw.com
      Teresa Ragatz
      Florida Bar No. 545170
      Ragatz@irlaw.com
      Catherine A. Mancing
      Florida Bar No. 23765
      Mancing@irlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via

CM/ECF this 11th day of August 2025, upon the following:

Marcus Neiman Rashbaum & Pineiro LLP
Jeffrey E. Marcus, Esq.
2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131
Tel.: (305) 400-4262
jmarcus@mnrlawfirm.com

Fuerstein Kulick LLP
David Feuerstein, Esq.
William Travis, Esq.
Christopher Alexander, Esq.
420 Lexington Avenue, 20th Floor
New York, New York 10170
(646) 768-0591
E-mail: david@dfmklaw.com
william@dfmklaw.com
calexander@dfmklaw.com

By: /s/ Eric D. Isicoff
Eric D. Isicoff

21