**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-22639-EA**

MATTHEW S. ATTALLA, an individual; and
BOXR STUDIOS LLC, a Florida Limited Liability
Company,

        *Plaintiffs*,

vs.

MATTHEW LEE MORGAN, an individual;
MATTHEW LEE MORGAN as trustee of the
MATTHEW LEE MORGAN TRUST; CRAIG
BRIDGMAN, an individual; CAMBRIDGE
CAPITAL OF MIAMI, LLC, a Florida Limited
Liability Company; BOXR HOLDING, INC., a
Delaware Limited Liability Company; and BOXR
HOLDING, LLC, a Delaware Limited Liability
Corporation,,

        *Defendants /*
        *Counterclaim-Plaintiffs*.

_____/

**DEFENDANTS/COUNTERCLAIM-PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS/COUNTERCLAIM-DEFENDANTS'**
**<u>MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ...........................................................................................................i

TABLE OF AUTHORITIES............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

FACTS ................................................................................................................................4

      A.    Attalla Seeks Morgan and Bridgman's Help to Build the BOXR Business ...........4

      B.    Morgan and Bridgman Continue Developing the BOXR Business .......................5

      C.    Attalla Delays Memorializing His Agreement with Morgan and Bridgman, Reneges on His Promise, and Takes the BOXR Business for Himself .................7

LEGAL STANDARD ........................................................................................................9

ARGUMENT....................................................................................................................10

    I.    THE COUNTERCLAIMS STATE A CLAIM FOR DECLARATORY JUDGMENT..................................................................10

    II.    THE COUNTERCLAIMS PROPERLY ALLEGE THAT ATTALLA BREACHED HIS FIDUCIARY DUTIES TO THE JOINT VENTURE.............11

      A.    A Joint Venture Exists Between the Parties ...........................................12

      B.    Attalla Had (and Violated) a Fiduciary Duty to Counterclaim-Plaintiffs ..............................................14

    III.    COUNTERCLAIM-PLAINTIFFS STATE A VALID CLAIM FOR FRAUD........................................................................14

    IV.    THE COUNTERCLAIMS' ADDITIONAL CAUSES OF ACTION ARE ALL PROPERLY ALLEGED..............................................16

    V.    COUNTERCLAIM-PLAINTIFFS' ALLEGATIONS SUPPORT A CLAIM FOR PUNITIVE DAMAGES .......................................19

CONCLUSION.................................................................................................................20

## TABLE OF AUTHORITIES

**CASES**                                                                                        **PAGE(S)**

*Adams Partners, Inc. v. Bentley Motors, Inc.*
    No. 06-81138-CIV, 2007 WL 1812278 (S.D. Fla. June 22, 2007) ....................................9

*Agritrade, LP v. Quercia*
    253 So. 3d 28 (Fla. 3d DCA 2017)...............................................................................17

*Atkins v. Topp Telecom., Inc.*
    873 So.2d 397 (Fla. 4th DCA 2004)..............................................................................12

*Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*
    985 F. Supp. 2d 1356 (S.D. Fla. 2013).................................................................... 12, 14

*Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*
    309 F. Supp. 3d 1216 (S.D. Fla. 2018)...........................................................................9

*Doe v. Evans*
    814 So. 2d 370 (Fla. 2002).........................................................................................12

*Edwards v. Landsman*
    51 So. 3d 1208 (Fla. 4th DCA 2011)............................................................................16

*Floyd v. Guardian Life Ins. Co.*
    415 So.2d 103 (Fla. 3d DCA 1982)...............................................................................10

*Foley v. Dick*
    436 So.2d 139 (Fla. 2nd DCA 1983)................................................................... 3, 4, 20

*Hansen v. Premier Aviation Holdings, LLC*
    No. 17-CV-61025, 2017 WL 8893119 (S.D. Fla. Nov. 21, 2017)............................ 12, 14

*Hill v. Morehouse Med. Assocs., Inc.*
    No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003)...................................3, 15

*Immediate Cap. Grp., Inc. v. Spongetech Delivery Sys., Inc.*
    No. 10–60059–CIV, 2010 WL 1644952 (S.D. Fla. Ap. 22, 2010) ................................ 19

*Inetianbor v. Cashcall, Inc.*
    No. 13-60066-CIV, 2016 WL 4250644 (S.D. Fla. Apr. 5, 2016) ...................................14

*Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info. Tech. Sols., Inc.*
    744 F. Supp. 2d 1305 (S.D. Fla. 2010).........................................................................10

*Kleiman v. Wright*
    No. 18-CV-80176, 2021 WL 5447110 (S.D. Fla. Nov. 22, 2021)................................17

*Laney v. Am. Equity Inv. Life Ins. Co.*
    243 F. Supp. 2d 1347 (M.D. Fla. 2003)........................................................................3, 20

*MCM Holdings, Inc. v. Levy*
    No. 17-CV-20426, 2017 WL 11716614 (S.D. Fla. May 25, 2017) ................................17

*New Vista Dev. Corp. v. Doral Terrace Assocs., Ltd.*
    878 So. 2d 462 (Fla. Dist. Ct. App. 2004) ....................................................................14

*Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. of DC*
    2011 WL 3843931 (S.D. Fla. Aug. 26, 2011)................................................................18

*Palm Beach Atlantic College, Inc. v. First United Fund, Ltd.*
    928 F.2d 1538 (11th Cir. 1991)..................................................................................3, 20

*Perret v. Wyndham Vacation Resorts, Inc.*
    889 F. Supp. 2d 1333 (S.D. Fla. 2012).........................................................................11

*Point Conversions, LLC v. WPB Hotel Partners, LLC*
    324 So. 3d 947 (Fla. 4th DCA 2021)............................................................................16

*Regency Of Palm Beach, Inc. v. QBE Ins. Corp.*
    No. 08-81442-CIV, 2009 WL 2729954 (S.D. Fla. Aug. 25, 2009) ...............................10

*RHC Dev., LLC v. Addison Ins. Co.*
    No. 6:24-CV-2120, 2025 WL 2432523 (M.D. Fla. Aug. 23, 2025) ...............................11

*Soffer v. R.J. Reynolds Tobacco Co.*
    187 So. 3d 1219 (Fla. 2016).........................................................................................19

*Sola v. Markel*
    320 So. 3d 326 (Fla. Dist. Ct. App. 2021) ..............................................................11, 12

*Spliethoff Bevrachtingskantoor B.V. v. United Yacht Transp. LLC*
    No. 21-61422-CIV, 2022 WL 17070554 (S.D. Fla. Nov. 17, 2022)...............................10

*Sticky Holsters, Inc. v. Wagner*
    277 So. 3d 1067 (Fla. Dist. Ct. App. 2019) ..................................................................10

*Tambourine Comercio Internacional S.A. v. Solowsky*
    No. 06-20682-CIV, 2007 WL 9701095 (S.D. Fla. Oct. 29, 2007)..................................20

*Telestrata, LLC v. NetTALK.com, Inc.*
    126 F. Supp. 3d 1344 (S.D. Fla. 2015).................................................................2, 10, 11

*U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*
    510 F. Supp. 2d 1027 (S.D. Fla. 2007).........................................................................14

*United Techs. Corp. v. Mazer*
  556 F.3d 1260 (11th Cir. 2009).........................................................................2, 4, 9, 18

*WL All. LLC v. Precision Testing Grp.*
  No. 3:19CV4459, 2021 WL 9968311 (N.D. Fla. Oct. 19, 2021).....................................13

*Zaki Kulaibee Establishment v. McFliker*
  771 F.3d 1301 (11th Cir. 2014)......................................................................................19

*Zamber v. Am. Airlines, Inc.*
  282 F. Supp. 3d 1289 (S.D. Fla. 2017)...........................................................................16

Defendants/Counterclaim-Plaintiffs Matthew Lee Morgan ("Morgan"), in his individual capacity and as Trustee of the Matthew Lee Morgan Trust under agreement dated September 26, 2018 (the "Trust"), Craig Bridgman, an individual ("Bridgman" and together with Morgan, the "Majority Partners"), Cambridge Capital of Miami, LLC, a Florida Limited Liability Company ("Cambridge"), BOXR Holding, Inc., a dissolved Delaware Corporation ("BOXR Inc."), and BOXR Holding, LLC, a Delaware Limited Liability Company ("BOXR Holding" and together with Morgan, the Trust, Bridgman, Cambridge, and BOXR Inc., collectively, "Counterclaim-Plaintiffs"), by and through their undersigned counsel, submit this memorandum of law in opposition to the motion to dismiss (Dkt. No. 30, the "Motion") filed by Plaintiffs/Counterclaim-Defendants, Matthew Attalla and BOXR Studios, LLC ("BOXR Studios," and collectively "Attalla" or "Counterclaim-Defendants").[1]

## PRELIMINARY STATEMENT

This case arises out of the Counterclaim-Defendants' flagrant and ongoing violations of the parties' joint venture agreements concerning the development and operation of a gym located in Miami, Florida (the "Gym"). After the Counterclaim-Defendants sought and accepted the Counterclaim-Plaintiffs' help in building and operating the Gym (which has now become a great success), Attalla and the other Counterclaim-Defendants now seek to subvert those agreements by ignoring their promises and keeping all of the Gym's profits to themselves.

It is against this backdrop that the Counterclaim-Defendants now move to dismiss the Counterclaims. But as set forth more fully below, the Counterclaim-Defendants' Motion ignores

---

[1] On August 25, 2025, Counterclaim-Plaintiffs filed their Amended Counterclaims and Answer with Affirmative Defenses. (Dkt. No. 21, the "Counterclaims.") All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Counterclaims.

the law and the relevant facts.  More specifically, the Motion should be denied for at least the following five reasons.

*First*, the Counterclaim-Plaintiffs have unquestionably stated a claim for declaratory judgment because the Counterclaims seek to resolve active disputes about, *inter alia*, (i) whether a joint venture exists between the parties, (ii) the parties' relative ownership of the business, (iii) ownership over the Mark, and (iv) the parties' entitlement to the business' profits.  These types of disputes are regularly decided through declaratory judgment actions.  Thus, the Counterclaim-Defendant's motion should be denied for that reason alone.  *See, e.g.*, *Telestrata, LLC v. NetTALK.com, Inc.*, 126 F. Supp. 3d 1344, 1354 (S.D. Fla. 2015).

*Second*, the Counterclaim-Plaintiffs have adequately alleged a claim for breach of fiduciary duty.  While Counterclaim-Defendants argue that no joint venture or fiduciary relationship existed, such an argument is (i) directly at odds with years of actions in which Attalla treated the Counterclaim-Plaintiffs as his partners, and (ii) contrary to the facts alleged in the Counterclaims, which the Court is required to accept as true at this stage of the litigation. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).  At most, the Counterclaim-Defendants have raised a factual question that cannot be resolved without the benefit of discovery and a full record.  Accordingly, the efforts to dismiss the fiduciary duty claims must fail.

*Third*, the Counterclaim-Plaintiffs have adequately alleged a claim of fraud. Indeed, the Counterclaims include detailed allegations regarding Attalla's misrepresentations concerning his immigration status, the nature of the parties' agreements, as well as Attalla's improper retention of all of the Gym's profits despite no right to do so.  (*See, e.g.*, Counterclaims at ¶¶ 4-7, 8-13 19, 36-39 50, 63-64, 72, 91, 97, 101.)  Moreover, there is nothing wrong with the Counterclaim-Plaintiffs alleging facts "on information and belief," when those facts are squarely within the

2

Counterclaim-Defendants' knowledge or control. *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at \*3 (11th Cir. Aug. 15, 2003). Thus, the fraud claim meets the standard required by Fed. R. Civ. P. 9(b) and should not be dismissed.

*Fourth*, the Counterclaim-Plaintiffs' remaining claims each state a claim for relief. For example, the Counterclaims' unfair competition claim is premised on those allegations that detail Attalla's efforts to steal both the ownership and profits from the parties' joint venture. (Counterclaims at ¶¶ 15, 16, 108-110, 116, 120, 171.) Similarly, the Counterclaims contain sufficient allegations to support the Counterclaim-Plaintiffs' conversion and unjust enrichment claims by detailing the ways in which Attalla has acted in bad faith, by, *inter alia*, ignoring the parties' long-established joint venture and retaining all of the Gym's profits to deprive the Counterclaim-Plaintiffs of millions of dollars. To the extent the Counterclaim-Defendants disagree, their arguments are based on disputed facts that cannot serve as the basis to dismiss properly pled claims.

*Finally*, the Counterclaims contain numerous allegations of the Counterclaim-Defendants' bad faith and intentional misconduct, all of which support the Counterclaim-Plaintiffs' arguments for punitive damages. As alleged, Attalla engaged in deceptive and intentional misconduct to convince the Counterclaim-Plaintiffs to provide their expertise, network, and funding for the benefit of the joint venture, only to then deprive the Counterclaim-Plaintiffs of those benefits. (Counterclaims at ¶¶ 5-7, 10-12, 40-42, 49, 51-53, 56, 58-60, 67-68, 77-85, 88-89, 94.) Moreover, Florida law unquestionably allows punitive damages for claims like those asserted here. *See Laney v. Am. Equity Inv. Life Ins. Co.*, 243 F. Supp. 2d 1347, 1354 (M.D. Fla. 2003) (applying punitive damages to breach of fiduciary duty); *Palm Beach Atlantic College, Inc. v. First United Fund, Ltd.*, 928 F.2d 1538, 1546 (11th Cir. 1991) (applying punitive damages to fraud claim); *Foley v.*

3

*Dick*, 436 So.2d 139, 141 (Fla. 2nd DCA 1983) (permitting punitive damages for conversion). Accordingly, the Motion should be denied for this reason as well.

**FACTS**[2]

**A.      Attalla Seeks Morgan and Bridgman's Help to Build the BOXR Business**

In the summer of 2021, Attalla was running a small fitness facility in Florida through his own entity, BOXR Studios, and met Morgan through a mutual friend.[3]  (Counterclaims at ¶ 2.) Excited by the prospect of potentially expanding his business, Attalla and Morgan began strategizing for a potential expansion.  (*Id.* ¶ 3.)  As part of that discussion, Morgan introduced Attalla to Bridgman, another experienced investor who Morgan believed would be helpful to his and Attalla's venture. (*Id.* ¶¶ 32-34.)  Shortly thereafter, Attalla, Morgan and Bridgman (the "Founding Parties") agreed to grow the BOXR business together.  (*Id.* ¶¶ 5, 35.)  Under the parties' agreement, Morgan and Bridgman (the "Majority Partners") would supply the necessary capital and business acumen, along with access to their network, while Attalla, the boxing expert, would serve as the operating partner and CEO, overseeing day-to-day operations of the Gym.  (*Id.* ¶¶ 3, 35.)  Pursuant to their agreement, Morgan and Bridgman would each own 30% of the BOXR business, while Attalla owned the remaining 40%.  (*Id.* ¶¶ 4, 38-39.)

As the Founding Parties had agreed, Morgan and Bridgman supplied the business with the capital it needed to grow, which eventually grew to $845,837.  (*Id.* ¶ 10.)  Recognizing the need to formalize their arrangements, the Founding Parties agreed that they would form a holding company to own the business, and Attalla agreed that he would assign his prior company, BOXR

---

[2] Unless otherwise noted, all facts contained herein are described in the Counterclaims, which must be accepted as true for purposes of deciding the instant motion. *See United Techs. Corp.*, 556 F.3d at 1269.

[3] Although Attalla operated BOXR's business by himself at this time, he neither owned, nor took any steps to register any trademark for the BOXR brand. (Counterclaims at ¶¶ 2, 31.)

4

Studios, to that holding company.  (*Id.* ¶ 37.)  Accordingly, the Founding Parties formed two entities in August 2021: BOXR Inc. (the intended holding company) and BOXR Gym (a wholly owned subsidiary of BOXR Inc.).  (*Id.* ¶ 5, 48.)  When formed, BOXR Inc. was jointly owned by Morgan and Attalla, both of whom were named as the initial directors.  (*Id.* ¶ 5, 41.)  Attalla was kept apprised throughout the process and executed numerous documents in connection with BOXR Inc.'s formation, including a "Unanimous Written Consent of the Stockholders."  (*Id.* ¶¶ 43-46.)  Morgan and Attalla – in their capacity as directors of BOXR Inc. – also signed an Operating Agreement for BOXR Gym, which was wholly owned by BOXR Inc.  (*Id.* ¶¶ 48-49.)

Once the two entities were formed, Attalla enthusiastically operated within the parties' decided structure, emailing others that business issues should run through BOXR Gym (which was wholly owned by BOXR Inc.).  (*Id.* ¶ 50.)  Attalla also actively worked with Morgan and BOXR Inc.'s attorneys to apply for the BOXR Mark with the USPTO.  (*Id.* ¶¶ 7, 54.)  Meanwhile, Morgan and Attalla searched for a new, larger property to house the Gym.  (*Id.* ¶ 55.)  Once a new property was identified, Morgan led negotiations over the lease, and eventually, Morgan and Attalla executed a lease on behalf of BOXR Gym for the property where the business currently operates (the "Property").  (*Id.* ¶¶ 56-59.)  Morgan also personally guaranteed BOXR Gym's obligations under the lease.  (*Id.* ¶ 60.)  And, to secure proper equipment for their new facility, Morgan and Bridgman executed personal guarantees for gym equipment.  (*Id.* ¶¶ 11, 85.)

**B.      <u>Morgan and Bridgman Continue Developing the BOXR Business</u>**

With the new Property secured, Morgan and Bridgman took active roles to further develop the business.  For example, Morgan and Bridgman (i) provided capital to build out the new facility, (ii) were intimately involved in developing the new facility, (iii) led negotiations on behalf of the BOXR business for a potential collaboration with Floyd Mayweather, and (iv) provided far more

than mere "lenders" would do under any circumstances.  (*Id.* ¶¶ 78, 80.)  In addition, Attalla frequently asked Morgan and Bridgman to attend meetings with clients and potential brand-partners and described them as "the money guy[s] for BOXR."  (*Id.* ¶ 79.)

As the business continued to grow, the parties recognized that a slightly different corporate structure could provide significant financial advantages to the Founding Parties.  (*Id.* ¶ 67.)  Thus, with Attalla's full knowledge and agreement, the Founding Parties elected to change the holding company from BOXR Inc. to BOXR Holding, a limited liability company.  (*Id.*)

In April 2022, BOXR's new facility opened, and the business continued to grow with the Founding Parties at the helm.  (*Id.* ¶ 87.)  Throughout the spring and summer of 2022, Attalla continued to rely on Morgan and Bridgman for their efforts to grow the business.  (*Id.* ¶¶ 88-89.)  During this period, Attalla continued to repeatedly acknowledge Morgan and Bridgman's status as partners (or co-venturers).  (*Id.* ¶¶ 93-94).  For example, in an email dated August 6, 2022, Attalla (i) proposed updated plans to "expand the business," and (ii) asked Morgan for advice on further expansion because he "would love to create a win-win situation to expand the gym to reach the levels we foresee but also give you back the ***distributions*** that you deserve."  (*Id.* ¶¶ 96-97 (emphasis added).)

In August 2022, Attalla wrote:

> Thanks Matt, I think [having monthly meetings with you, Bridgman and others is] a great idea. We can implement to have a scheduled call once a month where Jonathan and myself can give you guys an update and break down on the financials, as you guys are the ***investors*** and we are obligated to do so, I want to show you guys the ***fruitfulness of your investment*** in my brand. We really want to show you how far we can scale the brand to its fullest potential.
>
> Having the ***participation from you guys is tremendous value*** and I appreciate it a lot. I'm really excited to take BOXR to the next level with you guys, worldwide.

6

> Again thank you for always supporting, believing in the work we are putting in and seeing the vision. ***Together we are here to takeover***.

(*Id.* ¶ 101 (emphasis added).)

### C.   Attalla Delays Memorializing His Agreement with Morgan and Bridgman, Reneges on His Promise, and Takes the BOXR Business for Himself

Throughout the Founding Parties' relationship, Morgan and Bridgman repeatedly requested that the parties memorialize their arrangement and ownership of the BOXR business. First, in the summer of 2021, Morgan and Bridgman prepared a shareholder agreement for BOXR Inc.  (*Id.* ¶ 62.)  On the precipice of execution, Attalla asked Morgan and Bridgman to "hold off." (*Id.* ¶ 64.)  Specifically, Attalla told Morgan and Bridgman that he could (i) not sign certain agreements because he did not have authorization to work in the United States, and (ii) be deported if he was identified in an improper manner.[4]  (*Id.* ¶ 63.)  Not wanting to cause the deportation of their business partner, Morgan and Bridgman agreed.  (*Id.* ¶ 65.)

In December 2021, the Majority Partners – again with Attalla's knowledge and agreement, registered BOXR Holding as a Delaware LLC.  (*Id.* ¶¶ 67-69.)  To accommodate Attalla's concerns about his immigration status, Morgan (through his Trust) was initially the company's sole member.  (*Id.* ¶ 71.)  Shortly thereafter, Cambridge became a member of BOXR Holding and shared ownership evenly with Morgan's Trust.  (*Id.*)  Notwithstanding the terms of the Operating Agreement, all of the parties, including Attalla, agreed that nothing would change with regard to the parties' equity interests in the business.  (*Id.* ¶¶ 71-72.)  After BOXR Holding was formed, the Founding Parties (again including Attalla) took steps to transfer (or assign) both the application

---

[4] Notably, this had not prevented Attalla from signing agreements on behalf of the prior entities, or serving as a founder and director of BOXR Inc.  (Counterclaims at ¶¶ 5, 41, 46, 49, 59.)

for the BOXR Mark and the ownership of BOXR Gym to the new holding company.  (*Id.* ¶ 74.)
BOXR Inc. was thereafter dissolved.  (*Id.* ¶ 75.)

As the business continued to grow, the parties' lack of formal documentation began causing issues.  For example, the parties attempted to lease additional gym equipment from a vendor that Attalla had previously worked with through BOXR Studios.  While Morgan and Bridgman had previously guaranteed many of the business' obligations in their individual capacity, this equipment vendor refused to lease any new gym equipment to the joint venture because Attalla was not identified as an owner of the new entities.  As a result, Morgan and Bridgman renewed their push to fully memorialize the already-operational agreements of the parties' joint venture. (*Id.* ¶ 90.)

In the summer of 2022, Morgan and Bridgman provided Attalla with new documents formalizing the parties' arrangement under BOXR Holding.  Once again, Attalla refused to sign, citing fears with his immigration status.  (*Id.* ¶¶ 90-91.)  All the while, however, Attalla continuously reassured Morgan and Bridgman that they remained his business partners.  (*Id.* ¶¶ 93, 94-97, 101.)

But once the BOXR business started to truly experience success, Attalla's tone quickly changed.  Suddenly, Attalla disclaimed any business relationship with Morgan and Bridgman, citing the lack of documentation between the parties as evidence.  (*Id.* ¶ 110.)  Of course, Morgan and Bridgman had only agreed to hold off on finalizing the document with Attalla due to Attalla's alleged concerns about his immigration status.  (*Id.* ¶¶ 8, 13, 63, 91.)  As it turns out, those concerns were untrue and were designed to allow Attalla to avoid executing the final documentation with the Majority Partners.  In an effort to avoid litigation, the parties attempted to negotiate a business

8

divorce, with Attalla making certain payments to Bridgman and Morgan (totaling far less than owed), to no avail.  (*Id.* ¶ 115.)

With no agreement in place, Attalla continues to retain the profits of the BOXR business (and the fruitfulness of Morgan and Bridgman's work) for himself, by among other things, (i) using the Mark[5] owned by BOXR Holding, (ii) using the Property through a lease personally guaranteed by Morgan, and (iii) using gym equipment obtained through leases personally guaranteed by Morgan and Bridgman.  (*Id.* ¶ 120.)  Attalla has also attempted to steal the equity owned by the Majority Partners by creating new entities and business divisions, all of which rely on the Mark, without providing Morgan and Bridgman any renumeration.  (*Id.* ¶ 171.)  If that were not enough (it is), Attalla has since purported to sell Morgan and Bridgman's ownership of the BOXR business to third parties (only to renege on those promises, employing the same "immigration status" scheme used against Morgan and Bridgman).  (*Id.* ¶¶ 19, 117, 141.)

## **LEGAL STANDARD**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and take them in the light most favorable to the plaintiff.  *See United Techs. Corp.*, 556 F.3d at 1269.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, which when assumed to be true, raises a right to relief above that is not speculative.  *Id.* (internal quotations omitted).  A claim has "facial plausibility" when the plaintiff pleads factual content that allows the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1219 (S.D. Fla. 2018).

---

[5] The USPTO granted BOXR Holding's application for the Mark on November 1, 2022.  (Counterclaims at ¶ 103.) As noted above, the application was initially submitted by BOXR Inc., for which Attalla served as a founder and Director, and with Attalla's cooperation and help.  (*Id.* ¶¶ 5, 41, 46.)

## ARGUMENT

### I.   THE COUNTERCLAIMS STATE A CLAIM FOR DECLARATORY JUDGMENT

A party seeking declaratory relief must allege facts showing a "bona fide adverse interest between the parties concerning a power, privilege, immunity or right of the plaintiff; the plaintiff's doubt about the existence or non-existence of his rights or privileges; that he is entitled to have the doubt removed." *Adams Partners, Inc. v. Bentley Motors, Inc.*, No. 06-81138-CIV, 2007 WL 1812278, at *2 (S.D. Fla. June 22, 2007) (citing *Floyd v. Guardian Life Ins. Co.*, 415 So.2d 103, 104 (Fla. 3d DCA 1982)).  The party must also show an "actual, present and adverse interest in the subject matter." *Floyd,* 415 So.2d at 104.  Claims for declaratory judgment are "to be liberally administered and construed."  *Regency Of Palm Beach, Inc. v. QBE Ins. Corp.*, No. 08-81442-CIV, 2009 WL 2729954, at *2 (S.D. Fla. Aug. 25, 2009); *see also Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1310 (S.D. Fla. 2010).

Here, there is little question that a "bona fide and actual controversy exists," or that the Counterclaims adequately state a claim for declaratory judgment. The Counterclaim-Defendants principally argue that the Counterclaim-Plaintiffs actually seek a "declaration that Attalla's actions were fraudulent, unfair and inequitable."  (Motion at 7.)  But even a cursory review of the Counterclaims undermines their assertions.

Florida courts have routinely held that declaratory judgment actions are appropriate to determine the existence and scope of a joint venture between the parties.  *See, e.g.*, *Telestrata, LLC*, 126 F. Supp. 3d at 1344 ("[T]he question of rightful ownership of securities is a proper case or controversy for resolution by a declaratory judgment claim."); *Sticky Holsters, Inc. v. Wagner*, 277 So. 3d 1067, 1068 (Fla. Dist. Ct. App. 2019); *Spliethoff Bevrachtingskantoor B.V. v. United Yacht Transp. LLC*, No. 21-61422-CIV, 2022 WL 17070554, at *9 (S.D. Fla. Nov. 17, 2022)

10

(ownership of trademark was properly resolved through declaratory judgment).[6]  Here, Count I of the Counterclaims seeks a declaration to resolve the parties' opposing positions regarding (i) the existence of a joint venture, (ii) ownership of the various BOXR entities, (iii) the Majority Partners' entitlement to a share of the business' profits, and (iv) ownership of the BOXR Mark. (Counterclaims at ¶ 133.)  While Attalla's fraud and bad faith actions are certainly relevant to adjudicating the parties' rights and obligations, the relief sought would be the same regardless of whether Attalla's actions are deemed "fraudulent, unfair [or] inequitable."  *See Telestrata, LLC*, 126 F. Supp. 3d at 1344.  Accordingly, there is no basis to dismiss the declaratory judgment claim.

The Counterclaim-Defendants also argue – albeit half-heartedly – that the declaratory judgment claims are duplicative of the Counterclaims' other causes of action.  (Motion at 7.)  Even if that were true (it is not), "the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  *See* Fed. R. Civ. P. 57; *see also RHC Dev., LLC v. Addison Ins. Co.*, No. 6:24-CV-2120, 2025 WL 2432523, at *2 (M.D. Fla. Aug. 23, 2025).  Indeed, a claim for declaratory judgment "merely requires an actual controversy."  *RHC Dev., LLC*, 2025 WL 2432523, at *3.  Here, the Counterclaim-Plaintiffs' claims undoubtedly raise such a controversy.  Accordingly, the Counterclaim-Plaintiffs' claim for a declaratory judgment should not be subject to dismissal.

## II.   THE COUNTERCLAIMS PROPERLY ALLEGE THAT ATTALLA BREACHED HIS FIDUCIARY DUTIES TO THE JOINT VENTURE

To state a cause of action for fiduciary duty, a plaintiff must show the "existence of a duty, a breach of that duty, and damage proximately caused by that breach."  *Sola v. Markel*, 320 So. 3d

---

[6] None of the cases the Counterclaim-Defendants cite requires a different result.  For example, in *Perret v. Wyndham Vacation Resorts, Inc.*, the plaintiffs specifically sought a "declaration" that the defendant had acted in a manner that was "fraudulent, unconscionable, and inequitable."  889 F. Supp. 2d 1333, 1346-47 (S.D. Fla. 2012).  There is no such claim duplication here, and *Perret* (and the other cases that the Counterclaim-Defendants rely on) are thus irrelevant to the instant Motion.

326, 328 (Fla. Dist. Ct. App. 2021). Absent express agreement, the existence of a fiduciary duty is "premised upon the specific factual situation surrounding the transaction and the relationship of the parties and exist[s] where confidence is reposed by one party and a trust accepted by the other." *Hansen v. Premier Aviation Holdings, LLC*, No. 17-CV-61025, 2017 WL 8893119, at *4 (S.D. Fla. Nov. 21, 2017) (quoting *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002)). Ultimately, whether a fiduciary duty exists is a fact-specific question that is ill-suited to dismissal at the pleading stage, because it is "often impossible to say that [a] plaintiff will be unable to prove the existence of a fiduciary relationship" until discovery is complete. *Hansen*, 2017 WL 8893119, at *4 (internal quotations omitted).

### A.   **A Joint Venture Exists Between the Parties**

The Counterclaim-Defendants first argue that Attalla had no fiduciary duty because no joint venture existed between the parties. (Motion at 9-10.) But the Counterclaim-Defendants' argument relies on a few cherry-picked quotes and Attalla's own factual assertions. (*Id.*) Accordingly, such arguments fail.

To establish the existence of a joint venture, there must be "(1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained." *Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1364 (S.D. Fla. 2013). Under Florida law, a joint venture agreement need not be in writing, and the creation of a joint venture can be inferred from the parties' conduct. *See Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256, 1271 (S.D. Fla. 2020); *Atkins v. Topp Telecom., Inc.*, 873 So.2d 397, 399 (Fla. 4th DCA 2004). Moreover, "[i]t is well-established and long-settled under Florida law that whether a partnership or joint venture exists is ordinarily a question of fact

12

. . . that should be left for the jury or finder of fact to determine at trial." *WL All. LLC v. Precision Testing Grp.*, No. 3:19CV4459, 2021 WL 9968311, at *4 (N.D. Fla. Oct. 19, 2021) (collecting cases).

Here, the Counterclaim-Defendants argue that the Counterclaims allege only that Morgan and Bridgman were "lenders." (Motion at 10.)  But the Counterclaims do not use the word "lender" or "loan" anywhere.  Rather, the Counterclaims allege that Morgan and Bridgman provided capital with the expectation of being partners (or joint venturers) and would benefit by growing the BOXR business together.  (Counterclaims at ¶¶ 11, 12, 38, 82-83.)[7]  More specifically, the Counterclaims allege that while Attalla oversaw day-to-day operations, Morgan and Bridgman (i) provided capital, (ii) oversaw the legal and financial development of the venture, (iii) participated (with Attalla) in the recruitment of new members and business partners, (iv) personally guaranteed obligations for the BOXR gym, and (v) continually worked with Attalla to develop and grow both the Gym and BOXR's brand.  (*Id.* ¶¶ 4-7, 9-12, 36, 37, 50, 84-85, 89.)  None of this conduct is consistent with being a lender.  In addition, the Counterclaims allege that the Founding Parties agreed that Morgan and Bridgman would each be entitled to 30% of the joint venture (and its profits), while Attalla would earn 40% (*id.* ¶¶ 4, 38-39), and that Attalla treated the Majority Partners as partners and advisors, even telling them he wanted to make sure they got the "distributions" to which they were entitled (*id.* ¶ 97).  Such allegations, which must be taken as true, demonstrate the "community of interest" and joint interest in the venture and its outcomes that is required to establish the joint venture's existence.  Accordingly, the Counterclaims establish the existence of a joint venture.

---

[7] At most, the Counterclaim-Defendants raise factual disputes, which cannot support dismissal at this stage. *WL All. LLC v. Precision Testing Grp.*, 2021 WL 9968311, at *4.

**B.     Attalla Had (and Violated) a Fiduciary Duty to Counterclaim-Plaintiffs**

Once the joint venture's existence is established, there is little question that Attalla owed the Counterclaim-Plaintiffs a fiduciary duty.  In a joint venture, "co-partners owe to one another . . . the duty of the finest and highest loyalty."  *Hansen*, 2017 WL 8893119, at *5.  Indeed, it is well-established that "[i]f a joint venture agreement exists, the partners owe a fiduciary duty to each other." *Bluesky*, 985 F. Supp. 2d at 1365 (citing *New Vista Dev. Corp. v. Doral Terrace Assocs., Ltd.*, 878 So. 2d 462, 464 (Fla. Dist. Ct. App. 2004)).  Here, there is no question that the Counterclaims allege that Morgan and Bridgman placed their trust in Attalla to oversee day-to-day operations of the business, and to act in good faith as a trusted partner.  (Counterclaims at ¶¶ 4, 9, 73, 77.)  His failure to do so violated his fiduciary duty.  (*Id.* ¶ 18.)  To the extent the Counterclaim-Defendants argue to the contrary, they merely raise factual questions that can only be answered following discovery and the development of a complete record.  Accordingly, the Motion should be denied for this reason as well.

**III.     COUNTERCLAIM-PLAINTIFFS STATE A VALID CLAIM FOR FRAUD**

To establish a claim for fraud, the Counterclaim-Plaintiffs must allege a "(1) misrepresentation of material fact; (2) by someone who knew or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered in justifiable reliance on the representation." *Inetianbor v. Cashcall, Inc.*, No. 13-60066-CIV, 2016 WL 4250644, at *6 (S.D. Fla. Apr. 5, 2016) (internal citations omitted).  Although fraud claims must be pled with particularity under Fed. R. Civ. P. 9(b), there is no requirement that a complaint contain every relevant fact, especially where such information is within a defendant's knowledge or control.  *See U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007).

14

The Counterclaim-Defendants argue that the Counterclaims lack the requisite particularity to satisfy Rule 9(b).  (Motion at 13-14.)  But such an argument is once again belied by the allegations themselves.  Indeed, the Counterclaim-Plaintiffs have alleged in detail how Attalla solicited investments from the Majority Partners by representing that (i) he intended to form a joint venture, (ii) the Majority Partners would own 60% of the BOXR business, and (iii) his immigration status left him vulnerable to deportation if the joint venture agreement was memorialized. (Counterclaims at ¶¶ 4-7, 8-13 19, 36-39 50, 63-64, 72, 91, 97, 101.)

Attempting to inject uncertainty, Attalla raises several fact-based arguments that, even if true, do nothing more than create a dispute to be resolved at a later stage of the case.  For example, Attalla argues that because he signed the formation documents for BOXR Inc. and executed the formation documents for BOXR Gym, it is improbable that he "would sign documents that are publicly available but refuse to sign" an agreement memorializing the joint venture.  (Motion at 13.)  In addition to misrepresenting the order of events (as he only raised these issues later, when the parties sought to memorialize their joint venture including the equity split), such speculation cannot serve as the basis for dismissal of a well-pleaded fraud claim.

 Even where such claims are alleged "on information and belief," such allegations satisfy Rule 9(b) where they are uniquely within the defendant's knowledge or control.  *See Hill*, 2003 WL 22019936, at *3.  Here, information about Attalla's actual immigration status, and his surreptitious actions designed to undermine the Counterclaim-Plaintiffs' intentions are clearly within the Counterclaim-Defendants' control.  (Counterclaims at ¶¶ 8, 16, 19, 112.)  Accordingly, allegations based on information and belief are appropriate and sufficient under Rule 9(b).

15

## IV. THE COUNTERCLAIMS' ADDITIONAL CAUSES OF ACTION ARE ALL PROPERLY ALLEGED

The Counterclaim-Plaintiffs' additional causes of action for (i) unfair competition, (ii) conversion, (iii) unjust enrichment, and (iv) accounting are all adequately alleged in the Counterclaims.

For example, to establish a claim under the FDUTPA, a plaintiff must show that there has been (i) a deceptive act or unfair practice, (ii) causation, and (iii) actual damages. *See Point Conversions, LLC v. WPB Hotel Partners, LLC*, 324 So. 3d 947, 957 (Fla. 4th DCA 2021). Here, Attalla's deliberate and deceptive effort to create additional entities and attempt to sell equity that rightfully belongs to the Majority Partners presents a clear claim for unfair competition. (Counterclaim at ¶¶ 169, 171.) The Counterclaim-Defendants' only real argument is that the Counterclaims do not include sufficient details about the other entities Attalla has used. (Motion at 14.) But in order to establish a deceptive or unfair practice, all the Counterclaim-Plaintiffs have to allege is that the Counterclaim-Defendants' conduct was "likely to deceive a consumer acting reasonably in the same circumstances." *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1298 (S.D. Fla. 2017). There is no requirement that a complaint identify every detail of the supposed conspiracy. *Id.* at 1299. Thus, the claim is sufficiently alleged and the Counterclaim-Defendants' Motion ultimately fails.

Similarly, the Counterclaims contain detailed allegations to support a claim for conversion. To state a claim for conversion, a party must plead facts sufficient to "show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011). Here, the Counterclaims specifically allege that Attalla has taken and retained the Counterclaim-Plaintiffs' property, including but not limited to (i) the Majority Partners' equity in the parties' joint venture, (ii) the

16

BOXR Mark, and (iii) profits that rightfully belong to the Counterclaim-Plaintiffs.  Courts in this district have held that "exercising wrongful dominion or control over shares" in a partnership/joint venture is sufficient to state a plausible claim for conversion.  *MCM Holdings, Inc. v. Levy*, No. 17-CV-20426, 2017 WL 11716614, at *4 (S.D. Fla. May 25, 2017) ("[T]he Court is satisfied that Levy has sufficiently pleaded MCM and Camus exercised wrongful dominion or control over the shares at issue in this case and has stated a plausible claim for conversion.").  Moreover, shared assets owned by a joint venture (such as the BOXR Mark) are subject to conversion claims, which "may extend to the wrongful taking of intangible business interests."[8] *Kleiman v. Wright*, No. 18-CV-80176, 2021 WL 5447110, at *4 (S.D. Fla. Nov. 22, 2021) (conversion found for share of partnership's asset of bitcoin when the other partner improperly sold it).  Accordingly, there is no basis to dismiss the Counterclaim-Plaintiffs' conversion claim.

Next, the Counterclaim-Plaintiffs' unjust enrichment claim is also adequately alleged. Indeed, a claim for unjust enrichment requires a party to allege (i) a benefit conferred on the defendant, (ii) the defendant's voluntary acceptance and retention of that benefit, and (iii) that "the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Agritrade, LP v. Quercia*, 253 So. 3d 28, 33 (Fla. 3d DCA 2017).

Here, the Counterclaim-Defendants do not argue that the factual allegations underlying the unjust enrichment claim are insufficient, nor could they.  Indeed, the Counterclaim-Plaintiffs have clearly alleged that in expectation of receiving equity, they (i) provided funding as equity without formal terms or documentation, (ii) executed millions of dollars' worth of personal guarantees to

---

[8] Indeed, Attalla has conceded that he is using the Mark for his personal use and in direct contravention of the Joint Venture.  (*See* Complaint at ¶ 67.)

guaranty the Gym's obligations under several leases, (iii) solicited clients for the Property, (iv) provided access to the Majority Partners' team of professionals to develop the business, and (v) created several holding companies to protect key assets. (Counterclaims at ¶¶ 4, 10-12, 36-37, 39, 83-86, 88.)

Instead, the Counterclaim-Defendants argue that the unjust enrichment claim should be dismissed because there is a contract between the parties regarding the same subject matter. (Motion at 17.)  Even if that were true (yet another factual dispute), the unjust enrichment claim is pled as an alternative to the Counterclaim-Plaintiffs' other claims, which is expressly permitted under the Federal Rules' liberal pleading standard.  *See United Techs. Corp.*, 556 F.3d 1260 at 1269; *Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. of DC*, 2011 WL 3843931, at *3 (S.D. Fla. Aug. 26, 2011).  Moreover, one of the Counterclaim-Defendants' core arguments is that no joint venture or contract exists between the parties.  (Complaint at ¶ 39.)  If the Counterclaim-Defendants' argument is ultimately proven correct (it is not), pleading an unjust enrichment claim in the alternative preserves the Counterclaim-Plaintiffs' right to recovery for Attalla's actions. Such alternatives are precisely why Rule 8 allows liberal, alternative pleadings.  *Ocean's 11 Bar & Grill, Inc.*, 2011 WL 3843931, at *3. Accordingly, the motion should be denied for this reason as well.

While the Counterclaim-Plaintiffs have not explicitly stated that they pled the unjust enrichment claim in the alternative, "[a] party need not use any special words to properly plead in the alternative."  *Id.*  It can be readily inferred from the Counterclaims that if no joint venture agreement existed, that Attalla was unjustly enriched by failing to share profits with the Counterclaim-Plaintiffs because of their "considerable investment in the BOXR business."  (*See*

Counterclaims at ¶ 184.) Accordingly, the Counterclaim-Plaintiffs have properly pled a claim for unjust enrichment in the alternative.

Finally, under Florida law, a party seeking equitable accounting must allege either "(1) a sufficiently complicated transaction and an inadequate remedy at law or (2) the existence of a fiduciary relationship." *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1311 (11th Cir. 2014). The Counterclaim-Defendants make no actual argument on this claim, but merely state that the Counterclaim-Plaintiffs fail to meet either of the above standards.[9] (Motion at 18-19.) As discussed above, the Founding Parties owe each other fiduciary duties based on their joint venture relationship, and the Counterclaim-Plaintiffs have thus properly pled a claim for equitable accounting.

## V. COUNTERCLAIM-PLAINTIFFS' ALLEGATIONS SUPPORT A CLAIM FOR PUNITIVE DAMAGES

Under Florida law, a claim for punitive damages requires that a plaintiff allege that the conduct causing the damage was either "gross negligence" or "intentional misconduct." *See Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1232 (Fla. 2016). Intentional misconduct means that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." *Id.* To properly allege a claim for punitive damages, the underlying tort must be "committed in an outrageous manner or

---

[9] The Attalla Parties assert that a party must show that, "(i) the parties share a fiduciary relationship or that the questioned transactions are complex, *and* (ii) a remedy at law is inadequate." (Motion at 18-19) (quoting *Immediate Cap. Grp., Inc. v. Spongetech Delivery Sys., Inc.*, No. 10–60059–CIV, 2010 WL 1644952, at *2 (S.D. Fla. Ap. 22, 2010) (emphasis added). However, the Eleventh Circuit later noted that "imprecise language in this court's prior decisions has muddied the waters as to the necessary showing for an accounting under Florida law" and cited several recent Florida cases to articulate that equitable accounting may be properly pled by *only* showing the existence of a fiduciary relationship. *Zaki*, 771 F.3d at 1311 n. 22 (collecting cases).

with fraud, malice, wantonness or oppression." *Tambourine Comercio Internacional S.A. v. Solowsky*, No. 06-20682-CIV, 2007 WL 9701095, at *11 (S.D. Fla. Oct. 29, 2007).

Here, multiple causes of action in the Counterclaims properly allege claims for punitive damages. Florida law permits claims for punitive damages for breach of fiduciary duty, fraud, and conversion. *See Laney*, 243 F. Supp. 2d at 1354 (breach of fiduciary duty claims can give rise to punitive damages); *Palm Beach Atlantic College, Inc.*, 928 F.2d at 1546 (11th Cir. 1991) (applying punitive damages to fraud claim); *Foley*, 436 So.2d at 141 (permitting punitive damages for conversion). As alleged in the Counterclaims, Attalla has engaged in a lengthy and deliberate campaign of deception, in an attempt to keep for himself the 60% of equity in the joint venture that rightfully belongs to Morgan and Bridgman. (Counterclaims at ¶¶ 4-7, 8-13 19, 36-39 50, 63-64, 72, 91, 97, 101.) This includes his refusal to memorialize the joint venture because of his alleged immigration status, his use of newly-created entities to siphon funds and control of the business, and his intentional efforts to retain all of the profits generated by the business, regardless of the Counterclaim-Plaintiffs' extensive investment and efforts to establish and grow the business through the parties' joint venture. If true (as must be assumed at this stage), the Counterclaims clearly allege the type of intentional misconduct that supports a claim for punitive damages.

### CONCLUSION

For the foregoing reasons, the Counterclaim-Plaintiffs respectfully request that the Court deny the Motion in its entirety and award such other relief as the Court deems just and proper.

Dated: October 6, 2025

By: */s/ Jeffrey E. Marcus*
Jeffrey E. Marcus
Fla Bar No. 310890

**MARCUS NEIMAN RASHBAUM &
PINEIRO LLP**
2 South Biscayne Boulevard, Suite 2530
Miami, Florida 33131
T: (305) 400-4262
jmarcus@mnrlawfirm.com

**FEUERSTEIN KULICK LLP**

By: */s/ David Feuerstein*
David Feuerstein *pro hac forthcoming*
Seth Fiur *pro hac forthcoming*
420 Lexington Avenue, Suite 2024
New York, New York 10170
646-768-0591
david@dfmklaw.com
sfiur@dfmklaw.com

*Attorneys for Counterclaim-Plaintiffs*

21