**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Civil Docket No. 1:25-cv-22639-RAR**

MATTHEW S. ATTALLA, an individual; and
BOXR STUDIOS LLC, a Florida Limited Liability
Company,

       Plaintiffs/Counter-Defendants,

v.

MATTHEW LEE MORGAN, an individual;
MATTHEW LEE MORGAN as trustee of the
MATTHEW LEE MORGAN TRUST; CRAIG
BRIDGMAN, an individual; CAMBRIDGE
CAPITAL OF MIAMI, LLC, a Florida Limited
Liability Company; BOXR HOLDING, INC., a
Delaware Limited Liability Company; and BOXR
HOLDING, LLC, a Delaware Limited Liability
Corporation,

       Defendants/Counter-Plaintiffs.

_____/

**COUNTER-DEFENDANTS' REPLY IN SUPPORT**
**OF MOTION TO DISMISS AMENDED COUNTERCLAIM**

Counter-Defendants, Matthew S. Attalla and BOXR Studios LLC (collectively, "Attalla"), by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby reply in support of their Motion to Dismiss Amended Counterclaim (the "Motion") (D.E. 30). The Response in Opposition (the "Response") (D.E. 40) filed by Counter-Plaintiffs Matthew Lee Morgan, individually ("Morgan"), Matthew Lee Morgan as Trustee of the Matthew Lee Morgan Trust ("Morgan Trust"), Craig Bridgman ("Bridgman"), Cambridge Capital of Miami, LLC ("Cambridge"), BOXR Holding, Inc. and BOXR Holding, LLC (collectively "Counter-Plaintiffs") does not help them in their efforts to meaningfully address the meritorious arguments set forth in the Motion. Before addressing the merits of the Response, two central issues must be addressed.

Counter-Plaintiffs repeatedly argue that the Motion is rife with factual questions that cannot be resolved without discovery and a full record. (D.E. 40, pgs. 2, 3, 12-15, 18.) A summary judgment standard is not applied to a motion to dismiss. And, to the extent Counter-Plaintiffs suggest that discovery is needed to determine the sufficiency of their allegations at this stage, they are wrong. "Discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim." *Goldin v. Boce Grp., L.C.*, 773 F. Supp. 2d 1376, 1381 (S.D. Fla. 2011).

Counter-Plaintiffs also repeatedly assert that the Court must accept the facts alleged in the Amended Counterclaim ("Counterclaim") as true at this stage of the litigation. (DE 40, pgs. 2, 4, 9, 13, 20.) While that legal standard is accurate, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, "[t]hreadbare recitals of the

1

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In other words, the mere existence of an allegation does not make it a well-pled fact that, for purposes of a motion to dismiss, must be accepted as true.

## ARGUMENT

### I.  The Counterclaim Should Be Dismissed For Failure to State a Claim

#### A.  Counter-Plaintiffs Fail to State a Claim for Declaratory Judgment (Count I)

Counter-Plaintiffs seek the following declarations in their Response:

(i) the Founding Parties formed the Joint Venture, (ii) the Joint Venture owns the Mark, (iii) the Majority Partners collectively own 60% of the Joint Venture, (iv) the Majority Partners are entitled to a proportional share of the Joint Venture's profits, and (v) compelling the Attalla Parties to transfer the Majority Partners' their pro rata share of the Joint Venture's profits.

(D.E. 21 ¶ 133.) This claim is superfluous as any such issues would necessarily be resolved by other claims. It also impermissibly asks the Court to make factual determinations regarding past occurrences, not clarify current legal relationships.

Counter-Plaintiffs do not specify whether their declaratory judgment claim is brought under federal or state law. Ultimately, it is of no consequence; it is redundant as it mimics the relief sought in the claims for breach of fiduciary duty, fraud, conversion and unjust enrichment. They do not plead, for example, that the alleged common-law violations give rise to a right to declaratory relief. Instead, the claim arises out of nothing more than Attalla's repudiation of the existence of the alleged "Joint Venture" and his unwavering position that Morgan, Morgan Trust, Bridgman and Cambridge (collectively "Morgan & Bridgman") are not equity investors, which Counter-Plaintiffs allege creates "a bona fide and actual controversy." (D.E. 21 ¶¶ 130, 131.) They fail, however, to identify the basis of such controversy and have not pled the existence of any rights or other legal relations that require a declaration besides those covered by their common-law claims.

Declaratory judgment seeks *prospective* relief and a plaintiff must "allege facts from which

it appears there is a substantial likelihood that he will suffer injury in the future" and "that future injury must be 'real,' 'immediate,' and 'definite.'" *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1357 (11th Cir. 2021) (citations omitted). "The point of a declaratory judgment is to permit actual controversies to be settled before they ripen into violations of law, not to adjudicate past conduct." *Pena v. U.S. Coast Guard Seventh Dist.*, No. 18-23188-CIV-SCOLA/MCALILEY, 2019 WL 5430709, at *5 (S.D. Fla. Oct. 2, 2019) (citation omitted) R&R adopted 2019 WL 5423733 (S.D. Fla. Oct. 23, 2019). Moreover, "a declaratory judgment serves to clarify the legal relations and is not for the purpose of making factual determinations." *Medmarc Cas. Ins. C. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011).

Here Counter-Plaintiffs seek a declaration of facts based on past alleged occurrences regarding the existence and ownership percentages of the "Joint Venture" and whether it owns the BOXR trademark. There is no demand for relief seeking a purely legal ruling, such as a request to resolve differences in the interpretation of specific details of the "Joint Venture." Nor does the requested relief seek a result that would lead to a change in conduct by either party in order to conform their behavior to the law or minimize the danger of future monetary loss by the parties. The Court should decline to exercise its discretion to entertain the claim for declaratory judgment.

B.  **Counter-Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty (Counts II, III)**

Counter-Plaintiffs assert claims for breach of fiduciary duty on behalf of the alleged "Joint Venture" (Count II) and on their own behalf (Count III). Both counts are based upon the false premise that the "Joint Venture" exists. "Under Florida law, the question of whether a valid contract exists is a threshold question of law that may be properly decided by the court." *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014). To prove the existence of a written or oral contract, a plaintiff must plead: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification

3

of the essential terms." *Kolodziej*, 774 F.3d at 740. "[M]utual assent is a prerequisite for the formation of a contract" and the existence of assent is evaluated "by analyzing the parties' agreement process in terms of offer and acceptance." *Id.* at 741.

Counter-Plaintiffs allege that Attalla refused to sign any of the formation documents they presented to him. (D.E. 21 ¶¶ 8, 13, 62, 63, 90, 91, 106.) They concede that there is simply a "lack of any formal documentation memorializing the Joint Venture." (*Id.* ¶ 104.) Attalla's refusal to accept Counter-Plaintiffs' offer to form a joint venture, whether because of his citizenship status or for any other reason, is a lack of acceptance. No "Joint Venture" ever was formed.

Additionally, "it is a fundamental principle of contracts that in order for a contract to be binding and enforceable, there must be a meeting of the minds on all essential terms and obligations of the contract." *Browning v. Peyton*, 918 F.2d 1516, 1521 (11th Cir. 1990) (citing *O'Neill v. Corp. Trs., Inc.*, 376 F.2d 818, 820 (5th Cir. 1967) (construing Florida law)). The Florida Supreme Court has delineated the necessary elements to establish the existence of a joint venture:

> In addition to the essentials of an ordinary contract, in contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained.

*Browning*, at 1520 (citing *Kislak v. Kreedian*, 95 So.2d 510, 515 (Fla. 1957)).

Counter-Plaintiffs claim they have sufficiently alleged the first component of a joint venture, "a community of interest." (D.E. 40, p. 13.) Even if they have, which is denied, they fail to identify any allegations concerning the second through fifth requisite elements of a joint venture. They simply allege in conclusory fashion that a joint venture existed; there is no factual support demonstrating the above-cited five elements. That is insufficient under *Iqbal* and *Twombly*. Moreover, Counter-Plaintiffs have not alleged any essential terms of the "Joint Venture" other than their claim that they own 60% of BOXR gym. And with no "Joint Venture," no fiduciary duty

4

is owed. Counts II and III fail to state a claim as a matter of law.

###### C.    Counter-Plaintiffs Fail to State a Claim for Fraud (Count IV)

In Count IV, Counter-Plaintiffs allege that Attalla fraudulently represented that: "(i) he intended to form the Joint Venture, (ii) the Majority Partners would collectively own 60% of the BOXR business, and (iii) certain issues with Attalla's immigration status left him vulnerable to deportation if formal documentation were executed." (D.E. 21 ¶ 154.) That is the extent of their allegations and, as such, they are insufficient under Federal Rule of Civil Procedure 9(b).

A plaintiff "alleging fraud" must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Eleventh Circuit has held that "Rule 9(b) requires the plaintiff to allege 'the who, what, when[,] where, and how' of the fraudulent conduct." *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1296 (11th Cir. 2025) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)). Stated differently, "the plaintiff must allege '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[ ]; and (4) what the defendants gained by the alleged fraud.'" *Pop*, 145 F.4th at 1296 (citation omitted).

With respect to the allegations that Attalla fraudulently misrepresented that "he intended to form the Joint Venture," and that Morgan & Bridgman "would collectively own 60% of the BOXR business," Counter-Plaintiffs fail to allege the precise statements Attalla made, let alone the time and place the uncorroborated statements were made. They merely allege conclusions with no particularity whatsoever.

As to the allegation that Attalla fraudulently misrepresented his immigration status, Counter-Plaintiffs again fail to allege the precise statements Attalla allegedly made, or the time and place the uncorroborated statements were made. They merely allege that Attalla expressed

concern over his citizenship status, that he did not have authorization to work in the United States, and had to resolve his immigration status. (D.E. 21 ¶¶ 13, 16, 63, 64, 70, 91.) Those bare-boned conclusions do not meet the pleading standard of Rule 9, Fed. R. Civ. P. in a claim alleging fraud.

**D.      Counter-Plaintiffs Fail to State a Claim for Unfair Competition (Count V)**

To sustain a FDUTPA claim, a plaintiff must show "'(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages.'" *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1351-52 (S.D. Fla. 2017) (quoting *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013)). As the *Casa Dimitri* court explained:

> "Proof of actual damages is necessary to sustain a FDUTPA claim." … Florida courts consider actual damages, the third element of a FDUTPA claim, to be a "term of art," which ***does not include "consequential damages."*** … "Consequential or special damages are those which do not necessarily result from the injury complained of or which the law does not imply as the result of that injury." … Lost profits are a "quintessential example" of consequential damages. … Additionally, "***harm in the manner of competitive harm, diverted or lost sales, and harm to the goodwill and reputation" are consequential damages***.

*Casa Dimitri*, 270 F. Supp[. 3d at 1352 (emphasis supplied). Here, Counter-Plaintiffs only allege that Attalla caused competitive harm and lost sales, which are impermissible consequential damages. (*See* D.E. 21 ¶¶ 169-171.) They fail to address this deficiency in their Response.

Moreover, a "practice is unfair under the FDUTPA if it 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *Casa Dimitri*, 270 F. Supp. 3d at 1353 (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)). "A deceptive act occurs when a defendant makes 'a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Id.* The business at the center of this litigation is a "boxing and fitness business under the name 'BOXR.'" (D.E. 21 ¶ 3.) Counter-Plaintiffs, however, fail to identify whether Attalla's alleged "competing" entities are another gym, or entities such as a

6

barbershop or apparel store. They also fail to allege how existence of the purported, unidentified "competing" entities "offend established public policy" or are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" (*see Casa Dimitri*, 270 F. Supp. 3d at 1353) or how the purported competing entities are "likely to mislead reasonable consumers" (*see Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1299 (S.D. Fla. 2017)).

### E.      Counter-Plaintiffs Fail to State a Claim for Conversion (Count VI)

Counter-Plaintiffs assert that they sufficiently alleged a claim for conversion of their equity and profits from the alleged "Joint Venture" as well as conversion of the BOXR Mark. (D.E. 40 p. 16.) "[I]n order to state a claim for conversion, 'one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property.'" *MCM Holdings, Inc. v. Levy*, 2017 WL 11716614, at *4 (S.D. Fla. May 25, 2017) (citation omitted). *MCM Holdings*, cited by Counter-Plaintiffs in their Response, is instructive.

In *MCM*, Camus was the sole shareholder of MCM. *Id.* at *1. Levy began working with Camus and they entered employment and option agreements, which were subsequently amended. *Id.* Levy was a 30% shareholder of MCM, and Camus held the remaining 70% ownership. *Id.* After a few years, MCM and Camus "ejected Levy as an owner and ***diverted his shares to MCM and Camus***, denied Levy his rights as a shareholder, and removed him as a director." *Id.* at *2 (emphasis supplied). Levy objected and MCM and Camus cut off Levy's salary and closed Levy out of MCM. *Id.* The court found that Levy had sufficiently pleaded that MCM and Camus stated a plausible claim for conversion because of the diversion of Levy's shares. *Id.* at *4.

Here, Counter-Plaintiffs fail to plausibly allege that Attalla wrongfully asserted dominion or control over Morgan & Bridgman's equity in BOXR. Instead, they conclude, with no supporting facts, that "[u]pon information and belief, Attalla has since 'sold' [Morgan & Bridgman's] stake

in the Joint Venture without [their] knowledge or consent." (D.E. 21 ¶ 19.) They further allege that Attalla is holding Morgan & Bridgman's "equity (and the proceed flowing therefrom) hostage." (*Id.* ¶ 174.) In other words, the claim for conversion of equity is merely an improper masked claim for conversion of money.

Counter-Plaintiffs' claim for conversion of profits, with no identification of the source, amount or date of deposit, fails as a matter of law:

> "A conversion claim for money also requires proof that the funds are specific and identifiable." *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x. 263, 272 (11th Cir. 2009). However, the fact that the amount is certain does not mean that the money is an "identifiable fund." *See Frayman*, 515 F. Supp. 3d at 1286. Money is capable of identification if "it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained." *Tambourine*, 312 F. App'x. at 273 (quoting *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970) ("A mere obligation to pay money may not be enforced by a conversion action.")).

*Pishevar v. Hotels.com*, No. 24-cv-22081-BLOOM/Elfenbein, 2024 WL 4602798, at *6 (S.D. Fla. Oct. 29, 2024). Counter-Plaintiffs have pled nothing more than the conversion of unspecific and unidentified money.

Counter-Plaintiffs allege Attalla "(i) claims that the Mark belongs to him, (ii) concedes that he has attempted to improperly register the Mark for himself, and (iii) upon information and belief, is using the Mark for his own benefit and without authorization." (D.E. 21 ¶ 179.) The mere articulation of ownership and fail attempt to register the Mark do not rise to the level of wrongful assertion of dominion over property. Also, the Mark is owned by BOXR Holding, Inc. which, in turn, is owned by Morgan & Bridgman. (*Id.* ¶ 9.) The unauthorized use of someone else's trademark may be trademark infringement, but it is not conversion.

Finally, to state a claim for conversion, a plaintiff must allege damages, not just liability. *Ryder Truck Rental, Inc. v. Logistics Resource Sols., Inc.*, No. 21-21573-CIV-LENARD/LOUIS,

8

2022 WL 2348642, at *27 (S.D. Fla. May 26, 2022) ("[d]amages are an element of a conversion claim, and without damages there can be no cause of action." Counter-Plaintiffs fail to plead specific damages caused by Attalla's alleged conversion of equity, profits and the Mark.

**F.     Counter-Plaintiffs Fail to State a Claim for Unjust Enrichment (Count VII)**

Counter-Plaintiffs allege that Attalla has been unjustly enriched  by his retention of the alleged "profits of the Joint Venture." (D.E. 21 ¶ 185.) Counter-Plaintiffs allege that the unjust enrichment claim is "pled as an alternative to [their] other claims." However, contrary to Counter-Plaintiffs' assertions, the claim for unjust enrichment has ***not*** been pled clearly as an alternative claim. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1083 (S.D. Fla. 2019) (dismissing claim for unjust enrichment where claimant directly incorporated into the claim the factual allegation that an express agreement existed, noting that the claim for unjust enrichment had therefore not been pled in the alternative and stating, "A complaint cannot allege an express agreement in a claim for unjust enrichment."). Counter-Plaintiffs' claim for unjust enrichment incorporates paragraphs 1-120 of the Counterclaim. (D.E. 21 ¶ 182.) Paragraphs 5, 7, 9, 14, 35, 77, 83, 93, 104, 107 all allege the existence of an express "Joint Venture" agreement.

**G.     Counter-Plaintiffs Fail to State a Claim for Accounting (Count VIII)**

Counter-Plaintiffs did not sufficiently allege a claim for accounting, which requires allegations that "(1) the parties share a fiduciary relationship or that the questioned transactions are complex, and (2) a remedy at law is inadequate." *Immediate Cap. Grp., Inc. v. Spongetech Delivery Sys., Inc.*, No. 10–60059–CIV, 2010 WL 1644952, at *2 (S.D. Fla. Ap. 22, 2010). Nowhere in the Counterclaim do Counter-Plaintiffs allege that the questioned transactions are complex, or that a remedy at law is inadequate. Instead, they allege that Attalla was "entrusted with, and has possession of, business records and funds" and that he has "disregarded corporate

9

formalities in maintaining these business records and has instead weaponized his position of authority for personal gain." (D.E. 21 ¶¶ 190-191.) Count VIII has not been sufficiently pled and properly should be dismissed.

## II.     Punitive Damages

"Under Florida law punitive damages are available only upon a showing that the act complained of is characterized by willfulness, wantonness, maliciousness, gross negligence or recklessness, oppression, outrageous conduct, deliberate violence, moral turpitude, insult, or fraud.'" *Chengari v. Banyan Cay Resort Fund,* LLC, No. 24-80557-CIV-CANNON, 2024 WL 5088707, at *2 (S.D. Fla. Nov. 13, 2024) (citation and internal quotation marks omitted). "Whether punitive damage liability arises as a consequence of a tort or a coincidentally tortious breach of contract duty, the issue is the same, an assertion of a duty breached." *Cook v. Deltona Corp.*, 753 F.2d 1552, 1563 (11th Cir. 1985). Moreover, the availability of punitive damages turns upon the moral turpitude, or lack thereof, involved in that breach. *See id.* The requisite evil intent may also be inferred from the defendant's having pursued a course of action in wanton disregard of the consequences. *Johns–Manville Sales Corp. v. Janssens*, 463 So.2d 242, 247 (Fla. 1st DCA 1984).

This matter is a fairly straightforward business dispute. It does not rise to the level of willfulness, wantonness, maliciousness, gross negligence or recklessness, oppression, outrageous conduct, deliberate violence or moral turpitude. Even viewing things in a light favorable to Counter-Plaintiffs, there is no punitive damage claim here.

WHEREFORE, Counter-Defendants, Matthew Attalla and BOXR Studios LLC, respectfully request that the Court (1) dismiss the Counterclaim, for the reasons set forth above, (2) award them their attorneys' fees and costs to the fullest extent permitted by applicable law; and (3) grant such further relief as the Court deems just and appropriate under the circumstances.

10

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive
Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Eric D. Isicoff
       Eric D. Isicoff
       Florida Bar No. 372201
       Isicoff@irlaw.com
       Teresa Ragatz
       Florida Bar No. 545170
       Ragatz@irlaw.com
       Catherine A. Mancing
       Florida Bar No. 23765
       Mancing@irlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via

CM/ECF this 13th day of October 2025, upon the following:

Marcus Neiman Rashbaum & Pineiro LLP
Jeffrey E. Marcus, Esq.
2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131
Tel.: (305) 400-4262
jmarcus@mnrlawfirm.com

Fuerstein Kulick LLP
David Feuerstein, Esq.
William Travis, Esq.
Christopher Alexander, Esq.
420 Lexington Avenue, 20th Floor
New York, New York 10170
(646) 768-0591
E-mail: david@dfmklaw.com
william@dfmklaw.com
calexander@dfmklaw.com

By: /s/ Eric D. Isicoff
       Eric D. Isicoff

11